**VERIZON NORTH, INC. and Contel of the South, Inc., d/b/a Verizon North Systems, Plaintiffs,**

v.

**John ENGLER, in his official capacity as Governor of the State of Michigan, Laura Chappelle, in her official capacity as Chairman of the Michigan Public Service Commission; David A. Svanda, in his official capacity as Commissioner of the Michigan Public Service Commission; and Robert B. Nelson, in his official capacity as Commissioner of the Michigan Public Service Commission, Defendants.**

**No. 02–CV–71739–DT.**

United States District Court, E.D. Michigan, Southern Division.

June 3, 2002.

Andrew B. Clubok, Daryl L. Joseffer, Elizabeth S. Petrela, Kirkland & Ellis, Washington, DC, Seth D. Gould, Feeney, Kellett, Bloomfield Hills, MI, Richard A. Cordray, Grove City, OH, A. Randall Vogelzang, Irving, TX, for Verizon North, Incorporated, Contel of the South, Incorporated dba Verizon North Systems, plaintiffs.

David A. Voges, Steven D. Hughey, Michigan Department of Attorney General, Public Service Division, Lansing, MI, for John Engler, Governor of the State of Michigan, Laura Chappelle, Chairman of the Michigan Public Service Commission, David A. Svanda, Commissioner of the Michigan Public Service Commission, Robert B. Nelson, Commissioner of the Michigan Public Service Commission, defendants.

## OPINION AND ORDER

ZATKOFF, Chief Judge.

### I. INTRODUCTION

This matter is before the Court on Plaintiff's[1] motion for a preliminary injunction pursuant to FED. R. CIV. P. 65.[2] Defendants responded and Plaintiff replied. The Court heard oral argument on the issues presented on May 23, 2002. For the reasons set forth below, Plaintiff's motion for a preliminary injunction is DENIED. FURTHER, this Court shall ABSTAIN from adjudicating the constitutional issues in the action at bar until the Michigan courts have addressed the underlying state law issues, the disposition of which may materially alter, or obviate entirely, the constitutional issues raised in Plaintiff's papers. Therefore, this action is DISMISSED WITHOUT PREJUDICE pending resolution of the underlying state law issues by the Michigan courts. FURTHER, AT & T's Amended Motion to Intervene in the action at bar is similarly DISMISSED WITHOUT PREJUDICE.

### II. BACKGROUND

#### A. Factual History

Plaintiff filed a four-count complaint in this Court alleging that section 310(2) of

---

1. The Court will conform to the parties' papers and reference Plaintiff Verizon in the singular.

2. Plaintiff initially moved for a temporary restraining order, which the Court denied on May 3, 2002. However, in its Order of May 3, the Court set a preliminary injunction hearing for May 23, 2002 as well as a corresponding expedited briefing schedule, which was based on Plaintiff's detailed Motion for a Temporary Restraining Order and accompanying brief and complaint.

the Michigan Telecommunications Act (hereinafter "MTA"), *see* MICH. COMP. LAWS § 484.2310(2), is constitutionally infirm. Section 310(2) provides:

[A] provider of toll access services shall set the rates for toll access services. Access service rates and charges set by a provider that exceed the rates allowed for the same interstate services by the federal government are not just and reasonable. In no event may end-user or subscriber line charges exceed the rates allowed for the same interstate services by the federal government as of May 1, 2000. Providers may agree to a rate that is less than the rate allowed by the federal government. If the providers cannot agree on a rate, a provider may apply to the commission under section 204.

MICH. COMP. LAWS § 484.2310(2).

The Michigan Legislature has determined that Plaintiff must charge a "just and reasonable" rate for its service—a rate that must be equal to at least the "total service long run incremental cost" (hereinafter "TSLRIC") of providing the service. *See* MICH. COMP. LAWS §§ 484.2102(y) (" 'Reasonable rate' or 'just and reasonable rate' means a rate that is not inadequate .... A rate is inadequate if it is less than the total service long run incremental cost of providing the service."), 484.2304a ("Upon filing with and the approval of the commission, a basic local exchange provider shall restructure its rates for basic local exchange, toll, and access services to ensure that the rates are not less than the total service long run incremental cost of providing each service."), 484.2321 ("[A] provider of a regulated telecommunication service shall not charge a rate for the service that is less than the total service long run incremental cost of providing the service."). Plaintiff assesses an access charge, styled the Carrier Common Line Charge ("CCLC"), to other long distance carriers, which is included in the calcula-

tion of the TSLRIC for local service rates. Therefore, any reduction in the amount Plaintiff can charge for a CCLC necessarily reduces the TSLRIC for local service and requires Plaintiff to increase rates elsewhere to establish a "just and reasonable rate" commensurate with the TSLRIC in accord with M.C.L. §§ 484.2102(y), 484.2304a, 484.2321.

Section 310(2) mandates that the intrastate access charges assessed by Plaintiff may not exceed the interstate access charges which are set by the Federal Communications Commission (hereinafter "FCC"). *See* MICH. COMP. LAWS § 484.2310(2). ("Access service rates and charges set by a provider that exceed the rates allowed for the same interstate services by the federal government are not just and reasonable."). In July 2001, the FCC reduced the interstate charges paid by other long distance carriers (CCLC) to Plaintiff. Concomitantly, the FCC offset this reduction in interstate revenue by permitting Plaintiff to raise its interstate access charges to consumers and businesses, styled End User Common Line Charges ("EUCLC").

Under section 310(2), Plaintiff was required to reduce its intrastate CCLC to other long distance carriers to match, or "mirror," the FCC's interstate access rates. Unlike the federal authority however, section 310(2) caps the intrastate EUCLC that Plaintiff may assess consumers and businesses at the level set by the federal government as of May 1, 2000. *See* MICH. COMP. LAWS § 484.2310(2) ("In no event may end-user or subscriber line charges exceed the rates allowed for the same interstate services by the federal government as of May 1, 2000."). Therefore, Plaintiff is not able to raise its intrastate EUCLC charge to offset the mandatory reduction in the CCLC. Plaintiff avers that this will result in it assessing unjust

and unreasonable rates that fall below the TSLRIC and therefore violate M.C.L. §§ 484.2102(y), 484.2304a, 484.2321.

## B. Plaintiff's Position

Plaintiff's complaint asserts that section 310(2) is unconstitutional on four grounds: 1) it violates the Due Process Clause by failing to provide a mechanism to protect a constitutional return on its investment in the telecommunications market in Michigan; 2) it violates the Due Process Clause by depriving Plaintiff of its property (revenues) without a predeprivation hearing; 3) it violates the Fifth Amendment by taking Plaintiff's property without just compensation; and 4) it violates the Equal Protection Clause because it only applies to Plaintiff and Ameritech—providers with over 250,000 customers in Michigan. *See* MICH. COMP. LAWS § 484.2310(8) ("This section shall not apply to basic local exchange providers that have 250,000 or fewer customers in this state."). However, the briefing process and oral argument on the injunction issue reveal that Plaintiff is resting its argument at the preliminary injunction stage on only the due process claims. Plaintiff notes that section 310(2) reduces what it can charge for its CCLC access rates based on the FCC's reduction of same, but prohibits Plaintiff from raising its EUCLC rates above FCC levels of May 2000. Plaintiff argues that this reduction drops its rates below its TSLRIC, which results in an unreasonable rate under sections 102(y), 304a, and 321. *See* MICH. COMP. LAWS §§ 484.2102(y), 484.2304a, 484.2321. By prohibiting Plaintiff from offsetting the CCLC reductions by raising its EUCLC rates, Plaintiff alleges that section 310(2) is unconstitutional because it does not provide a mechanism

to ensure that Plaintiff recovers its costs and a reasonable profit on its investment in Michigan service—the rates set by section 310(2) are confiscatory. Plaintiff's rely on *Michigan Bell Tel. Co. v. Engler et al.*, 257 F.3d 587 (6th Cir.2001),[3] where the Sixth Circuit held that a separate provision of section 310 unconstitutionally deprived Michigan Bell of a constitutional rate of return by abolishing its ability to assess an EUCLC. Plaintiff also contends that section 310(2) violates procedural due process by failing to provide a pre-deprivation hearing before it reduces Plaintiff's rates and therefore reduces its revenue.

## C. Defendants' Position

Defendants respond to Plaintiff's due process claims with the assertion that the authority cited by Plaintiff does not stand for the proposition that a pre-deprivation hearing is required before confiscatory rates are imposed. The Sixth Circuit's decision in *Michigan Bell,* on which Plaintiff's so heavily rely, specifically indicated it is was not addressing whether a pre-deprivation mechanism is required under section 310. *See Michigan Bell Tel. Co.,* 257 F.3d at 594 n. 2. Further, section 304 of the MTA permits Plaintiff to raise its local exchange rates to offset the FCC's reduction of its CCLC and to challenge Defendants' rate making procedures on procedural and substantive grounds. *See* MICH. COMP. LAWS § 484.2304. Section 304(5) permits Plaintiff to raise its local rates within ninety days. Further, section 203(2) provides expedited emergency procedures under which Plaintiff may raise local rates. *See* MICH. COMP. LAWS § 484.2203(2). Defendants allege that increasing Plaintiff's local rates would put its

---

**3.** At oral argument, the Court asked Plaintiff counsel whether a mandate has been issued in the *Michigan Bell* case. Plaintiff counsel responded that a decision is pending on a rehearing as to how the issues in the case are affected by the United States Supreme Court's recent decision in *Verizon Communications, Inc. et al. v. Federal Communications Comm'n,* —— U.S. ——, 122 S.Ct. 1646, —— L.Ed.2d —— (2002).

rates at par with its TSLRIC and thereby result in a just and reasonable rate under sections 102(y), 304a, and 321, despite having to lower its CCLC in accord with section 310(2). Plaintiff responds that raising its local rates would irreparably harm its customer goodwill in the telecommunications industry.

Defendants argue further that, assuming *arguendo* that a pre-deprivation hearing is required before confiscatory rates are set pursuant to section 310(2), a pre-deprivation hearing is provided pursuant to the Coalition for Affordable Local and Long Distance Services (hereinafter "CALLS") plan, which was adopted by the FCC in its Sixth Report and Order. The CALLS plan, of which Plaintiff is a participant, specifically notes the existence of a regulatory mechanism to ensure that the interstate access rates that Plaintiff is required to mirror pursuant to section 310(2) are not confiscatory. Plaintiff responds that the FCC hearing regarding the mirroring provision of section 310(2) would not affect the corresponding cap that provision puts on EUCLC rates, a cap that is outside the province of the FCC's review pursuant to the CALLS plan.

Defendants also cite authority which stands for the proposition that rates are confiscatory only when they cause "deep financial hardship" and cause Plaintiff to operate "unsuccessfully." *See, e.g., 20th Century Ins. Co. v. Garamendi*, 8 Cal.4th 216, 32 Cal.Rptr.2d 807, 878 P.2d 566 (1994). Defendants assert that Plaintiff's total Michigan revenues for 2001 were $470,407,000 and that Plaintiff enjoys a 40% return on equity. Therefore, Plain-

tiff's alleged $18 million loss in revenue[4] caused by the application of section 310(2) is relatively nominal and not the "deep financial hardship" envisioned by the courts that will cause Plaintiff to operate "unsuccessfully." Defendants further assert that Plaintiff does not have a constitutional right to a particular rate design or revenue stream. Plaintiff responds that Defendants severely miscalculated its revenue and profit figures.

Defendants also argue that Plaintiff's facial constitutional challenge to section 310(2) must fail. Defendants maintain that section 310(2) does not set rates below cost in violation of sections 102(y), 304a, and 321, it merely mandates that Plaintiff's intrastate CCLU access rates mirror the FCC's interstate rates. Defendants maintain that this provision has been constitutionally applied since its inception in 1995. Plaintiff challenged the constitutionality of section 310(2) on its face, not as applied to the facts of this case. Because section 310(2) has been constitutionally applied in the past, Defendants argue that Plaintiff's due process claims fail because a facial challenge can only succeed if there are no set of circumstances in which the law may be applied constitutionally. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987).

Defendants argue further that the Johnson Act, *see* 28 U.S.C. § 1342, bars this Court from hearing constitutional challenges to public utility rates. Plaintiff answers that the Johnson Act only precludes federal court review of administrative agency orders, not state statutes.

---

**4.** Defendants also assert that Plaintiff used an incorrect methodology in performing the cost-studies that form the basis of its conclusion that it lost $18 million in revenue. Defendants assert that Plaintiff performed cost studies that analyzed each specific rate element of each service provided. Defendants' maintain that the MPSC expressly disap-

proved of this method and mandated that Plaintiff use the "average service rate" method by which it must analyze each level of individual services, not the specific elements of each service. Therefore, Defendants assert that the cost-studies that form the basis of Plaintiff's claim that section 310(2) causes it $18 million in lost revenue is flawed.

### D. Procedural History

#### 1. Michigan Public Service Commission Proceedings

Plaintiff's complaint in this Court stems from an April 16, 2002 order issued by the MPSC in an action styled *In the matter of the complaint of AT & T Communications of Michigan, Inc. against Verizon North, Inc. and CONTEL of the South, Inc., d/b/a Verizon North Systems,* MPSC No. U–13135. In the MPSC action, AT & T[5] filed a complaint with the MPSC which alleged that Plaintiff had violated section 310(2) by failing to reduce its intrastate access service rates to the levels set by the FCC for interstate access services.

Effective July 3, 2001, Plaintiff implemented interstate access service rate reductions in accordance with the CALLS plan adopted by the FCC. On July 9, 2001, Plaintiff filed a revision to its Michigan intrastate access service tariff that increased certain rate elements rather than decreasing them to the corresponding interstate levels, left certain rate elements unchanged despite the rate reduction for corresponding interstate rate elements, and reduced certain rate elements to their corresponding interstate levels. On September 26, 2001, AT & T filed its complaint with the MPSC alleging that Plaintiff was charging rates for intrastate carrier switched access services that violated section 310(2). Plaintiff filed an answer denying any violation of section 310(2). Plaintiff alleged, as it does in the case at bar, that reducing rates for certain intrastate rate elements to their corresponding interstate levels would cause the rate elements to be priced below TSLRIC levels in violation

of sections 102(y), 304a, and 321 of the MTA.

Pursuant to notice, an Administrative Law Judge (hereinafter "ALJ") conducted a prehearing conference on October 30, 2001, wherein the ALJ granted a petition to intervene by the Michigan Attorney General and established a schedule for the proceedings. On December 11, 2001, a second prehearing conference was conducted by the ALJ for the purpose of ruling on motions to strike prefiled testimony. Evidentiary hearings were conducted on December 13, 2001 and January 17, 2002. The administrative record, which consisted of 509 transcript pages and thirty-five exhibits, was closed on January 17, 2002. After a full briefing by the parties, the ALJ issued a Proposal for Decision on March 18, 2002. The ALJ, applying Michigan rules of statutory construction and prior MPSC orders, determined that the mirroring requirements imposed by section 310(2) took precedence over the TSLRIC provisions contained in the MTA. Therefore, Plaintiff was required to lower its intrastate CCLC to the interstate level set by the FCC in accordance with section 310(2), despite the fact that this would set its access rates below TSLRIC in violation of sections 102(y), 304a, and 321.

On March 25, 2002, AT & T and Plaintiff filed exceptions to the ALJ's Proposal for Decision. On April 1, 2002, timely replies to the exceptions were filed by AT & T and the Attorney General. On April 2, 2002, Plaintiff submitted its reply to exceptions, one day late. Essentially, Plaintiff argued that the ALJ misapplied the rules of statutory construction in determining

---

5. AT & T, a purchaser of access service from Plaintiff, filed an Amended Motion to Intervene in the matter at bar. Plaintiff responded in opposition and AT & T replied. Because the Court has dismissed Plaintiff's motion for a preliminary injunction without prejudice based on the doctrine of abstention, *see* discussion *infra* Part III, AT & T's Amended Motion to Intervene is similarly DISMISSED WITHOUT PREJUDICE.

that section 310(2) controls over sections 102(y), 304a, and 321. Plaintiff maintained that such a construction would give rise to the constitutional infirmities at issue in the case at bar, and therefore the MPSC must avoid a violation of the Constitution by ruling that the TSLRIC provisions prevail over 310(2).

On April 16, 2002, the MPSC issued its order in Case No. U–13125. The MPSC determined that, in accordance with the applicable Michigan rules of statutory construction, section 310(2) would prevail over the TSLRIC provisions of the MTA. *See* MICH. COMP. LAWS §§ 102(y), 304a, and 321. Essentially, the MPSC ruled, using Michigan case law regarding statutory construction, that because the TSLRIC provisions do not apply exclusively to access rates and section 310(2) does, "[s]ection 310(2) is more specific as related to intrastate access rates" and therefore prevails over the more general TSLRIC provisions.

The MPSC then ordered Plaintiff to cease and desist from its practice of charging intrastate access service rates which exceed their corresponding interstate rates, and to refund to AT & T all excess rates that were collected by Plaintiff commencing July 13, 2001. The MPSC directed Plaintiff to issue the refund by May 16, 2002—thirty days from the date of its April 16 order.

Finally, the MPSC notified the parties of their right to appeal its order as of right directly to the Michigan Court of Appeals within thirty days of the issuance and notice of its order. *See* MICH. COMP. LAWS § 462.26 ("[A]ny common carrier or other party in interest, being dissatisfied with any order of the commission fixing any rate or rates . . . or any order fixing any regulations, practices, or services, may

within 30 days from the issuance and notice of that order file an appeal as of right in the court of appeals.").

Instead of appealing the decision of the MPSC to the Michigan Court of Appeals as of right pursuant to section 462.26 of the MTA, Plaintiff filed a Motion for a Temporary Restraining Order and corresponding four-count complaint in this Court on May 2, 2002.[6] *See* discussion *supra* Part II.A.

## 2. Federal Court Proceedings

On May 3, 2002, the Court denied Plaintiff's Motion for a Temporary Restraining Order, which asked the Court to hold section 310(2) unconstitutional and enjoin "Defendants, and all parties acting in concert therewith, from enforcing Section 310(2) of the MTA against [Plaintiff]." The Court denied Plaintiff's motion but ordered the parties to brief the issue on an expedited schedule and present the Court with argument on May 23, 2002 as to whether a preliminary injunction should issue. On May 7, 2002, the Court denied Plaintiff's Motion for Reconsideration of that decision. The Court heard oral argument on the issues presented on May 23, 2002.

## III. ANALYSIS

■ The Court finds that the United States Supreme Court's decision in *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), and its progeny compel this Court to abstain from adjudicating the constitutional issues in this case until the Michigan judiciary, pursuant to section 462.26 of the MTA, passes on the propriety of the MPSC's construction of the conflicting provisions of the MTA using Michigan rules of

---

6. Counsel for Plaintiff, keeping in form with the excellent lawyering demonstrated by both parties in this matter, filed a protective appeal

in the Michigan Court of Appeals pursuant to section 462.26 prior to the expiration of the 30–day grace period.

statutory construction. The Court finds that the Michigan courts' interpretation of the MTA could materially alter or obviate entirely the constitutional issues raised in Plaintiff's submissions to this Court.

"Federal court abstention [pursuant to *Pullman* ] is required when state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary." ERWIN CHEMERINSKY, FEDERAL JURISDICTION 737 (3d ed.1999). In *Pullman,* the Texas Railroad Commission issued a regulation which required sleeping cars operating on any Texas railroad to be "continuously in the charge of" a conductor, and not solely a porter. Plaintiff brought suit in federal district court alleging that the regulation was not authorized by state law and that it unconstitutionally discriminated against blacks because at the time of suit all conductors in Texas were white and all porters were black. The state commission acted pursuant to an ambiguous state statute that purported to provide the state commission with the power to issue regulations governing the state railroads. The district court enjoined enforcement of the regulation.

The Supreme Court stated that because it was unclear whether the state commission's order was authorized by the state statute, the district court should have abstained from deciding the matter until the state courts had an opportunity to interpret the unclear state statute. *See Pullman,* 312 U.S. at 499–500, 61 S.Ct. 643. The Court was emphatic that "[t]he last word on the meaning of" the ambiguous state statute, and the state commission's authority to act under it, belongs to the state courts and not a federal court of equity. *See id.* The Court noted that if the state courts interpreted the state statute in a way that denied the state commission's authority to issue the contested order, the constitutional question would be avoided. *See id.* at 501, 61 S.Ct. 643. The *Pullman* Court stated that because the state statute had a provision that provided a direct review of the state commission's orders in state court, the means for determining the state commission's authority under the state law were "easy and ample." *Id.*

The *Pullman* Court noted the policy justifications for its decision:

> Few public interests have a higher claim upon the discretion of a federal chancellor than the avoidance of needless friction with state policies, [such as] ... the final authority of a state court to interpret doubtful regulatory laws of the state. These cases reflect a doctrine of abstention appropriate to our federal system whereby the federal courts, "exercising a wise discretion," restrain their authority because of "scrupulous regard for the rightful independence of the state governments" and for the smooth working of the federal judiciary.

*Id.* at 500–01, 61 S.Ct. 643 (internal citations omitted).

As in *Pullman,* this action involves an order by a state agency based on an arguable interpretation of an ambiguous state statute using state rules of statutory interpretation and construction. Indeed, the MPSC determined, based upon Michigan rules of statutory construction, that the mirroring provision of section 310(2) prevails over the TSLRIC provisions contained in sections 102(y), 304a, and 321. Further, as in *Pullman,* if the Michigan state courts interpret the relevant provisions of the MTA in such a way that the TSLRIC provisions prevail over the mirroring provision of section 310(2), the confiscatory rates and the alleged absence of a mechanism to avoid those rates, both of which form the basis of Plaintiff's due process arguments, would disappear along with the constitutional question. Finally,

as in *Pullman,* the propriety of this Court's abstention is buttressed by section 462.26 of the MTA, which provides a direct review of the MPSC's decision as of right in the Michigan Court of Appeals. Therefore, this Court is bound by the *Pullman* Court's prescription that "[t]he last word on the meaning of" the ambiguous provisions of the MTA, and the MPSC's interpretation of them, belongs to the Michigan courts and not a federal court of equity. *See Pullman,* 312 U.S. at 499–500, 61 S.Ct. 643.

In *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979), the Supreme Court ruled that the federal district court erred in declaring a state statute unconstitutional based on five ambiguous provisions. The Court held that the federal district court should have abstained from adjudicating the federal issues involved until the state courts had an opportunity to authoritatively construe certain ambiguous provisions of the state law. *See Babbitt,* 442 U.S. at 305–12, 99 S.Ct. 2301. In so ruling, the Court reiterated the policy behind abstention by citing *Pullman* and its progeny:

> "The paradigm of the 'special circumstances' that make abstention appropriate is a case where the challenged state statute is susceptible of a construction by the state judiciary that would avoid or modify the necessity of reaching a federal constitutional question." *Kusper v. Pontikes,* 414 U.S. 51, 54, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) . . . *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Of course, the abstention doctrine "contemplates that deference to state court adjudication only be made where the issue of state law is uncertain." *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). But when the state statute at issue is "fairly subject to an interpretation which will ren-

der unnecessary or substantially modify the federal constitutional question," *id.,* at 535, 85 S.Ct. 1177, abstention may be required "in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication," *id.,* at 534, 85 S.Ct. 1177.

*Babbitt,* 442 U.S. at 306, 99 S.Ct. 2301. In the case at bar, the proceedings before the MPSC revealed quite clearly that the relevant provisions of the MTA are " 'fairly subject to an interpretation which will render unnecessary *or substantially modify the federal constitutional question.'* " *Id.* (quoting *Harman,* 380 U.S. at 535, 85 S.Ct. 1177). Although it is not difficult to foresee an interpretation by the state courts that would avoid the constitutional questions in this case, the highlighted language quoted in the preceding sentence implies that it is not a requirement—abstention is appropriate if the state courts' interpretation would substantially modify the constitutional question, which it might in this case. *See id.*

The Supreme Court's opinion in *Babbitt* also contains an implicit teaching on the issue of judicial economy. The district court in that case failed to abstain, entertained extensive litigation, only to be told by the Supreme Court that it was all for naught. *See id.* at 312, 99 S.Ct. 2301 ("We are sensitive to appellees' reluctance to repair to the Arizona courts after extensive litigation in the federal arena. We nevertheless hold that in this case the District Court should not have adjudicated substantial constitutional claims with respect to statutory provisions that are patently ambiguous on their face."). Prudence dictates that this Court abstain from adjudicating the constitutional issues in this case until the state court review process under section 462.26 of the MTA has run its course.

The Supreme Court's decision in *Arizonans for Official English v. Arizona*, 520 U.S. 43, 117 S.Ct. 1055, 137 L.Ed.2d 170 (1997), underscores another important principle of constitutional litigation:

> "Federal courts, when confronting a challenge to the constitutionality of a federal statute, follow a 'cardinal principle'; They 'will first ascertain whether a construction ... is fairly possible' that will contain the statute within constitutional bounds.... *Warnings against premature adjudication of constitutional questions bear heightened attention when a federal court is asked to invalidate a State's law,* for the federal tribunal risks friction-generating error when it endeavors to construe a novel state Act not yet reviewed by the State's highest court. Speculation by a federal court about the meaning of a state statute in the absence of prior state court adjudication is particularly gratuitous when ... the state courts stand willing to address questions of state law on certification from a federal court."

*Arizonans for Official English*, 520 U.S. at 78–79, 117 S.Ct. 1055 (emphasis added) (internal citations omitted). As discussed *supra*, the Michigan courts "stand willing to address" the issue of whether the ambiguous and conflicting provisions of the MTA can be construed so as to "contain the statute within constitutional bounds." *Id.* Therefore, this Court "'should hold its hand, lest it render a constitutional decision unnecessarily.'" *Reetz v. Bozanich*, 397 U.S. 82, 85, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970) (quoting *City of Meridian v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 640–41, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959)).

The reasoning and authority cited by Plaintiff in arguing against abstention is inapposite. Plaintiff notes that the district court that authored the underlying opinion in *Michigan Bell Tel. Co. v. Engler et al.*, 257 F.3d 587 (6th Cir.2001), declined to abstain and ruled on the constitutional is-

sues involved. Plaintiff notes further that defendants in that case did not raise abstention again on appeal. However, the procedural posture of the matter before the district court in *Michigan Bell* was very different from the procedural posture of the matter at bar. The *Michigan Bell* case involved a recently enacted statutory provision, the constitutionality of which plaintiffs challenged directly in federal court—plaintiffs did not petition the MPSC and therefore there was no MPSC order that the district court had to consider. This case involves a detailed and lengthy state administrative record, which culminated in an order by the MPSC, which interpreted the same provisions of the MTA involved in this case in accord with Michigan rules of statutory construction. Therefore, unlike the district court in *Michigan Bell*, this Court can avoid the constitutional questions involved based on the detailed administrative record in this case and the MTA's provision affording immediate review of the MPSC's order in the Michigan Court of Appeals. *See* discussion *supra*.

Further, the district court in *Michigan Bell* determined that *Pullman* abstention was inappropriate by citing the Sixth Circuit's decision in *GTE North, Inc. v. Strand*, 209 F.3d 909, 921 (6th Cir.2000). However, *GTE* involved federal court review of an interconnection agreement pursuant to Section 252(e)(6) of the Federal Telecommunications Act. Relying on *GTE*, the district court in *Michigan Bell* refused to abstain because the provision at issue in that case was not ambiguous. In this case, there is an inherent conflict among the statutory provisions at issue. *See* discussion *supra*.

Further, unlike the recently enacted provision of the MTA involved in *Michigan Bell*, section 310(2) has been in effect since 1995 and has therefore been applied

without challenge for approximately seven years. Plaintiff's assertion that it is making a facial challenge to section 310(2), and therefore abstention is inappropriate, is belied by the fact that section 310(2) has been applied, presumably in a constitutional fashion, for several years. *See, e.g., United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). Plaintiff's complaint regarding confiscatory rates, and the alleged absence of a mechanism to avoid those rates, did not arise until it was forced to reduce its intrastate CCLC in accord with the FCC reduction of the interstate rate, which put its rates below its TSLRIC for the first time.

■ Assuming *arguendo* that Plaintiff's complaint could be construed as a valid facial challenge, abstention would still be warranted in this case for the reasoning previously set forth in this Opinion. "In cases involving a facial challenge to a statute, the pivotal question in determining whether abstention is appropriate is whether the statute is 'fairly subject to an interpretation which will render unnecessary or substantially modify the federal constitutional question.'" *City of Houston v. Hill,* 482 U.S. 451, 468, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (quoting *Harman v. Forssenius,* 380 U.S. 528, 534–35, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965)). Abstention is appropriate in a case involving a facial challenge when the language of the statute

is ambiguous and its constitutionality turns "'upon a choice between one or several alternative meanings.'" *Id.* (quoting *Baggett v. Bullitt,* 377 U.S. 360, 378, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964)). As was established earlier, this action involves an order by a state agency based on an arguable interpretation of an ambiguous state statute using state rules of statutory interpretation and construction. Further, the constitutionality of section 310(2) "turns upon a choice between one or several alternative" interpretations of the relevant MTA provisions, as can be determined by the state courts in Michigan pursuant to section 462.26 of the MTA.

The remaining cases cited by Plaintiff in its reply brief and at oral argument in support of its argument against abstention are inapposite as they do not address abstention under the *Pullman* doctrine. Therefore, abstention under *Pullman* and its progeny is appropriate in this case.

## IV. CONCLUSION

Accordingly, for the reasons stated above, Plaintiff's motion for a preliminary injunction is DENIED. FURTHER, this Court shall ABSTAIN from adjudicating the constitutional issues in the action at bar until the Michigan courts have addressed the underlying state law issues, the disposition of which may materially alter, or obviate entirely, the constitutional issues raised in Plaintiff's papers. Therefore, this action is DISMISSED WITHOUT PREJUDICE [7] pending resolution of the underlying state law issues by the

---

7. In order to remove any possible obstacles to state-court jurisdiction, the Court is dismissing this action without prejudice in lieu of staying the action pending determination of the state-law questions in state court. *See Harris County Comm'rs Court v. Moore,* 420 U.S. 77, 88–89, 95 S.Ct. 870, 43 L.Ed.2d 32 (1975); *see also* ERWIN CHEMERINSKY, FEDERAL JURISDICTION 763 (3d ed.1999). Because the

action is dismissed without prejudice, any federal claims remaining after the Michigan courts have been given the opportunity to address the state-law questions may be raised in a federal forum pursuant to the Supreme Court's decision in *England v. Louisiana State Bd. of Med. Exam'rs,* 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

Michigan courts. FURTHER, AT & T's Amended Motion to Intervene in the action at bar is similarly DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.

## JUDGMENT

IT IS ORDERED AND ADJUDGED that pursuant to this Court's Opinion and Order dated 3 JUN 2002, this cause of action is DISMISSED WITHOUT PREJUDICE.