BEEBEE v HASLETT PUBLIC SCHOOLS (AFTER REMAND)

Docket No. 58263. Argued October 6, 1977 (Calendar No. 11). Resubmitted after remand to the State Tenure Commission January 26, 1979 (Calendar No. 25).—Decided May 1, 1979.

Louise Beebee, a tenured kindergarten teacher employed by the Haslett Public Schools, was dismissed from her employment after a public hearing by the Haslett Board of Education. The State Tenure Commission affirmed; but, after a first series of appeals on procedural issues, the Ingham Circuit Court, Ray C. Hotchkiss, J., reversed on finding that there was not competent, material and substantial evidence on the whole record to support the decision of the State Tenure Commission. The Court of Appeals, McGregor, P.J., and T. M. Burns and N. J. Kaufman, JJ., affirmed on the ground that the result of the decision of the State Tenure Commission was to permit a school district to dismiss a teacher for a disagreement in teaching philosophy (Docket No. 21048). The defendant appealed and, after the State Tenure Commission, upon remand, made specific findings of fact and conclusions of law, the Supreme Court issued an opinion in which it was *held:*

1. A review of the transcript of the hearings before the State Tenure Commission and its statement of findings makes it abundantly clear that the State Tenure Commission recognized that the validity of the plaintiff's teaching philosophy was not in dispute. Rather, the issue was the plaintiff's failure to implement her philosophy in a safe and orderly fashion and her refusal to cooperate with efforts by the school administration to achieve that goal.

2. There being no question of academic freedom involved, the task of the Court is limited to a review of the record to determine whether there was competent, material and substantial evidence to support the findings of the State Tenure Commission. This review considers the whole record. Although it

REFERENCES FOR POINTS IN HEADNOTES
[1] 68 Am Jur 2d, Schools § 183.
[2] 68 Am Jur 2d, Schools §§ 194, 204.
[3, 4] 68 Am Jur 2d, Schools §§ 814, 194.

does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by the State Tenure Commission. The courts must also accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an administrative agency's choice between two reasonably differing views.

3. The plaintiff argues that, at most, the evidence in this case tends to prove that there were periods during which she did not have complete control over all the students in her class. One cannot realistically expect a kindergarten teacher to have complete control over all the students at every moment, but administrative action against the teacher is not precluded unless the classroom is always, or usually, unruly or unsafe. There may be reasonable and just cause for dismissal if there is substantial evidence that the teacher's classroom is significantly more disorderly or unsafe than would be reasonably expected.

4. In this case, there was more than sufficient evidence that plaintiff's classroom was lacking in control and safety more often than would be reasonably expected in any kindergarten classroom, including one utilizing plaintiff's particular pedagogical method of an unregimented classroom, with part of the daily activities chosen by each child. Furthermore, the testimony supports the finding by the State Tenure Commission that plaintiff was made aware of the problem by the school administration and that she refused to cooperate. Her refusal was detrimental to the proper functioning of the administration and the school system. The record supports the finding that there was reasonable and just cause for the plaintiff's discharge.

The decision of the Court of Appeals is reversed.

66 Mich App 718; 239 NW3d 724 (1976) reversed.

1. SCHOOLS AND SCHOOL DISTRICTS — TENURED TEACHERS — DISCIPLINARY PROCEEDINGS — ACADEMIC FREEDOM.

No question of academic freedom was involved in the dismissal of a tenured teacher from her employment where a review of the transcript of the hearings before the State Tenure Commission and its findings makes it abundantly clear that the validity of the teacher's philosophy was not in dispute, but the issue was her failure to implement the philosophy in a safe and orderly fashion and her refusal to cooperate with efforts by the school administration to achieve that goal.

2. Schools and School Districts — Teacher Tenure Act — Disciplinary Proceedings — Appeal and Error.

The task of the Supreme Court on appeal from the State Tenure Commission is limited, in the absence of a question of academic freedom, to a review of the record to determine whether there was competent, material and substantial evidence to support a finding of the State Tenure Commission that there was reasonable and just cause for the dismissal of a tenured teacher by the school board; although the review does not attain the status of de novo review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by the State Tenure Commission (Const 1963, art 6, § 28).

3. Schools and School Districts — Tenured Teachers — Disciplinary Proceedings.

One cannot realistically expect a kindergarten teacher to have complete control over all students in the classroom at every moment, but disciplinary action may be taken against tenured kindergarten teacher if there is substantial evidence that the teacher's classroom is significantly more disorderly or unsafe than would be reasonably expected.

4. Schools and School Districts — Tenured Teachers — Disciplinary Proceedings.

A decision by the State Tenure Commission that a tenured kindergarten teacher was properly dismissed by the school board is supported by the record where there was more than sufficient evidence that the teacher's classroom lacked control and safety more often than would be reasonably expected in any kindergarten classroom, including one using the teacher's pedagogical method of an unregimented classroom; the teacher was made aware of the problem by the school administration and refused to cooperate; and her refusal was detrimental to the proper functioning of the school administration and the school system.

*Foster, Swift, Collins & Coey, P.C. (by James A. White* and *Arthur R. Przybylowicz), for plaintiff.*

*Thrun, Maatsch & Nordberg (by James T. Maatsch* and *Harry J. Zeliff), for defendant.*

Amicus Curiae:

*Shifman & Goodman, P.C. (by Burton R. Shif-*

man, *Philip J. Goodman* and *David M. Black),* for Michigan Association of School Boards.

FITZGERALD, J. We must determine in this case whether there was competent, material and substantial evidence on the whole record[1] to uphold a decision in which the State Tenure Commission found reasonable and just cause[2] for the dismissal of plaintiff, a tenured kindergarten teacher employed by defendant.

On August 12, 1968, after public hearings were held, plaintiff was discharged by the Haslett Board of Education. The board found that among the charges, the following had been proven and were controlling in its decision:

"She has failed to maintain classroom discipline even after repeated warnings.

\*    \*    \*

"She has failed to keep the classroom in a safe condition, thereby endangering the physical well-being of the students in her charge.

\*    \*    \*

"Based upon recent evaluation[s] she is not effective in her teaching procedure.

\*    \*    \*

"She fails to follow administrative directions after repeated warnings.

\*    \*    \*

"[She] fails to get along with her fellow teachers and in some instances impugns the integrity of her fellow teachers."[3]

On appeal, the State Tenure Commission upheld the dismissal in an opinion dated May 1, 1970. The

[1] Const 1963, art 6, § 28; MCL 24.306(1)(d); MSA 3.560(206)(1)(d).
[2] MCL 38.101; MSA 15.2001.
[3] Opinion of the Haslett Board of Education, August 15, 1968.

decision of the commission was appealed to the Ingham Circuit Court, which dismissed the appeal on procedural grounds. An appeal on the procedural issues to the Court of Appeals resulted in a remand on April 27, 1972, to the trial court for a decision on the merits. 40 Mich App 296; 198 NW2d 860 (1972).

On June 18, 1974, the Ingham Circuit Court issued an amended opinion and order reversing the State Tenure Commission. The circuit court held that there was not competent, material and substantial evidence on the whole record to support the tenure commission's decision.

Defendant appealed to the Court of Appeals. Although the Court of Appeals found that the circuit court had improperly conducted a *de novo* review, it concluded that the trial court's result was correct. While the Court of Appeals said that some of the evidence, if given credence and significant weight, might have been sufficient to uphold plaintiff's discharge, it held that the commission relied on a ground which was insufficient as a matter of law to support plaintiff's discharge. The Court of Appeals said that the tenure commission majority held in effect that "where a school board disagrees with the teaching philosophy[4] of a tenured teacher, it may dismiss that teacher even where his or her students' achievement level is equal to that of their peers". 66 Mich App 718, 723; 239 NW2d 724 (1976).

---

[4] Plaintiff used a learning center activity program in her class. This program is described by the tenure commission as follows:

"This program calls for an unregimented classroom, with part of the instructional day centered around activities chosen by the child. It entails the use of seven learning centers established throughout the classroom. At these centers the child, individually or as part of a group, could engage in a number of activities. By way of example, some of the activity centers created by appellant included one for role playing, a listening center, and an expressive media center."

We granted defendant's application for leave to appeal. 399 Mich 828 (1977). After oral arguments, we remanded to the State Tenure Commission with directions that it make specific findings of fact and conclusions of law. This Court retained jurisdiction. 401 Mich 954 (1977).

Pursuant to that order, the tenure commission majority filed its findings with this Court and this opinion results. The tenure commission found that the evidence established that there was a lack of control in plaintiff's classroom, and that the absence of control endangered the physical well-being of the students. The commission further found that numerous unsuccessful attempts were made by the school administration to work with plaintiff to bring supervision to her classroom 'and to strengthen her teaching program. This refusal to cooperate with the administration or to adjust her teaching procedures, in the commission's opinion, was detrimental to the school system. The commission concluded that such actions constituted reasonable and just cause for plaintiff's discharge.

We begin our discussion of this case by stating our disagreement with the reason set forth by the Court of Appeals for its reversal of the tenure commission. Specifically, we do not agree with its characterization of the basis for the tenure commission's decision as resting on the school board's disagreement with plaintiff's teaching philosophy. While the rationale supporting the tenure commission's decision was less than clear in its original opinion, a review of the transcript of the hearings before the commission and the findings of the commission filed with this Court pursuant to our order makes it abundantly clear that the tenure commission recognized that the validity of plaintiff's teaching philosophy was not in dispute.

Rather, at issue was plaintiff's failure to implement her philosophy in a safe and orderly fashion and her refusal to cooperate with administration efforts to achieve this goal.[5]

---

[5] In its opinion filed after our remand order, the tenure commission stated:

"The following facts were established:

"A. Appellant's teaching program was innovative. The administration allowed its use. During the school year, however, problems arose concerning classroom control and student safety in her application of the program.

"Appellant's claim that her discharge was based upon disagreement with her teaching philosophy, rather than her conduct or abilities, is not supported by the evidence. The evidence clearly does establish that the appellant's implementation of this methodology resulted in a classroom environment dangerous to her students."

In its original opinion the tenure commission stated:

"The philosophy of the learning center approach to teaching, the method used by Mrs. Beebee, was not in contention by the administration or board members, who were in agreement that such a method could be of benefit to youngsters."

Testimony at the hearings before the tenure commission also established that plaintiff's teaching philosophy was not on trial.

Mr. Dulmage, plaintiff's principal, testified as follows:

"To the best of my recollection we discussed her philosophy of education concerned with these various centers that she had in the room, and my reaction to them. I told Mrs. Beebee that I did not feel that these centers were bad. In other words, that her concept of organizing her room, I told her that I did not feel that this was bad. I did not feel that it was educationally unsound.

"However, I did feel that her practical application of it, in other words, her ability to handle the situation was not what it should be. She should, in order to make this work, she would have to exercise more control over the students and over the situation."

Mr. Mullen, an elementary school principal who evaluated plaintiff also testified:

"I didn't feel I—I don't feel I have to know her philosophy of education to go in and do an evaluation and see the things that I saw in that room. There is no philosophy of education that I know of that should provide for these kind of things that I saw in there. I wasn't quarreling with her theory of separate study areas or working areas for the children."

The following conversation between the chairman of the tenure commission and defendant's attorney is also instructive:

"*Chairman Farr:* Well, let me ask this question: If you know, if we accept what Mrs. Pinch said as being true on the day in question, and that was occurring all during the year, and no running, no sliding, so on and so forth, probably we wouldn't be here today.

"*Mr. Maatsch [Defendant's Attorney]:* I quite agree.

Thus, as we find no question of academic freedom involved here, our task is limited to a review of the record to determine whether there was competent, material and substantial evidence to support the tenure commission's finding that there was reasonable and just cause to uphold plaintiff's dismissal. The scope of our review is that set forth in *Michigan Employment Relations Commission v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974):

"The cross-fire of debate at the Constitutional Convention imports meaning to the 'substantial evidence' standard in Michigan jurisprudence. What the drafters of the Constitution intended was a thorough judicial review of administrative decision, a review which considers the whole record—that is, both sides of the record—not just those portions of the record supporting the findings of the administrative agency. Although such a review does not attain the status of *de novo* review, it necessarily entails a degree of qualitative and quantitative evaluation of evidence considered by an agency. Such review must be undertaken with considerable sensitivity in order that the courts accord due deference to administrative expertise and not invade the province of exclusive administrative fact-finding by displacing an agency's choice between two reasonably differing views. Cognizant of these concerns, the courts must walk the tightrope of duty which requires judges to provide the prescribed meaningful review."

On behalf of defendant, there was testimony by plaintiff's principal, other elementary school principals from the area, plaintiff's fellow teachers and parents of students in plaintiff's class, all of whom

---

*"Chairman Farr:* So really, aren't we faced here with a decision by this commission as to—I don't know which of you gentlemen to address this question to—whether or not this theory was implemented properly by Mrs. Beebee?

*"Mr. Younger [Plaintiff's Attorney]:* Right."

had occasion to observe plaintiff's classroom. They testified that one or more of the following conditions existed: Children were observed using knives without supervision, slamming tables together, fighting with water, throwing crayons, wooden blocks, pointed tiles and sawdust about the room, walking on tops of tables and window ledges, playing in the cloakroom, running around and shouting, and sliding on their backs on the floor. Plaintiff's classroom was described as disorderly, in that there were piles of material throughout the room, a tree stump with protruding nails, pieces of slivered lumber lying about the room, blocks and sawdust all over the floor, and paint spilled on the floor, cupboards and walls.

Plaintiff's principal testified that he had meetings with plaintiff during which he informed her that classroom control had to be improved. He testified that her responses during these meetings were not germane to what they were discussing. Because he was unsuccessful in communicating with plaintiff, he asked others to meet with her.

Shortly thereafter, the president of the Haslett Education Association and a fellow teacher at plaintiff's school met with plaintiff. The teacher testified that plaintiff would not listen to them.

Another meeting was held at which plaintiff, the school superintendent, the administrative assistant, a representative from the Michigan Education Association, the president of the Haslett Education Association and plaintiff's principal were present. At this meeting, parental complaints regarding classroom organization and control were discussed, as well as plaintiff's poor rapport with the school staff members.

Plaintiff also received two written evaluations, both critical of her teaching, prepared by her

principal and by another elementary school principal from the area. The latter testified that he attempted to discuss the evaluation with plaintiff, but that she was not responsive.

Plaintiff presented the testimony of four parents who had visited her classroom and who had found no evidence of disciplinary or safety problems. In addition, Jesse Pinch, a nursery school teacher associated with Michigan State University who utilized the same teaching philosophy as plaintiff's, testified that she accepted plaintiff's invitation to spend a day in plaintiff's classroom. Mrs. Pinch, who assisted with the class that day, testified that the children cooperated with her and that she was not distracted by anything else in the room. She did not observe any children running around the room or fighting. Apparently, the tenure commission assigned less weight to this witness's testimony as it stated that plaintiff had prior notice of Pinch's visit and that Pinch's assistance that day added to the control factor.

Plaintiff contends that there is no competent, material and substantial evidence from which it can be held that her classroom was always, or even most of the time, unsafe or unruly. At most, plaintiff argues, the evidence tends to prove that there were periods during which there was not complete control over all the students.

While we cannot realistically expect a kindergarten teacher to have complete control over all of his or her students at every moment, we also cannot accept plaintiff's contention that administrative action is precluded unless the classroom is always or usually unruly or unsafe. There may be reasonable and just cause for dismissal if there is substantial evidence that the teacher's classroom is significantly more disorderly or unsafe than

would be reasonably expected. In the instant case, there was more than sufficient evidence that plaintiff's classroom was lacking in control and safety more often than would be reasonably expected in any kindergarten classroom, including one utilizing plaintiff's particular pedagogical method.

Furthermore, the testimony supports the commission's finding that plaintiff was made aware of the problem by the administration and that she refused to cooperate. Such refusal was detrimental to the proper functioning of the administration and the school system.

Our analysis of the record leads us to conclude that there exists competent, material and substantial evidence to support the tenure commission's finding that there was reasonable and just cause to uphold plaintiff's discharge by defendant.

Accordingly, the decision of the Court of Appeals is reversed, and the decision of the State Tenure Commission is affirmed. Costs to defendant.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, RYAN, and BLAIR MOODY, JR., JJ., concurred with FITZGERALD, J.