VERIZON NORTH, INC v PUBLIC SERVICE COMMISSION

Docket No. 241340. Submitted January 13, 2004, at Lansing. Decided January 27, 2004, at 9:05 A.M. Leave to appeal sought.

Upon a complaint by AT&T Communications of Michigan, Inc., and after administrative proceedings in the Public Service Commission, the commission ordered Verizon North, Inc., and Contel of the South, Inc., (hereafter collectively referred to as Verizon) to cease and desist charging higher rates for intrastate access services than Verizon charged for corresponding interstate services, and to refund with interest the excessive amounts Verizon received. The commission determined that MCL 484.2310(2) of the Michigan Telecommunications Act (MTA), which prohibits telecommunications providers from raising corresponding intrastate end-user line charges beyond the limit the Federal Communications Commission set on May 1, 2000, for similar interstate charges, controlled. The commission rejected Verizon's contention that other provisions of the MTA, specifically MCL 484.2102(y), 484.2304a(2), and 484.2321, express legislative intent of guaranteeing the profitability of competing telecommunications providers and authorize Verizon to charge the higher rates for intrastate access services at issue. Verizon appealed.

The Court of Appeals *held*:

1. Pursuant to MCL 462.24, all rates, fares, charges, regulations, practices, and services prescribed by the Public Service Commission are presumed to be lawful and reasonable. A party aggrieved by an order of the commission has the burden of proving that the order is unlawful or unreasonable. To establish that a commission order is unlawful, the appellant must show that the commission failed to follow some mandatory statute or was guilty of an abuse of discretion in the exercise of its judgment.

2. In this case, the commission correctly concluded that MCL 484.2310(2) is more specific and, therefore, prevails over MCL 484.2102(y), MCL 484.2304a(2), and MCL 484.2321, which do not apply exclusively to rates for intrastate access services, but to all rates charged by a telecommunications provider. MCL 484.2310(2) unambiguously manifests the specific legislative intent that rates for intrastate toll access services may not exceed rates for the same interstate access services.

> 3. The commission's order is not a violation of due process or an unconstitutional taking. Verizon took full advantage of its opportunity at the administrative proceedings to challenge the required reduction in its rates, and failed to demonstrate that the reduced rates would cause it severe financial hardship or would otherwise be confiscatory.
>
> Affirmed.

*Loomis, Ewert, Parsley, Davis & Gotting, P.C.* (by *Harvey J. Messing, Gary L. Field,* and *Michael C. Rampe*), *Kirkland & Ellis* (by *Andrew B. Clubok, Daryl Joseffer,* and *Elizabeth S. Petrela*), and *A. Randall Vogelzang* for Verizon North, Inc., and Contel of the South, Inc.

*Michael A. Cox,* Attorney General, *Thomas L. Casey,* Solicitor General, and *David A. Voges, Steven D. Hughey,* and *Henry J. Boynton,* Assistant Attorneys General, for Public Service Commission.

*Fischer, Franklin & Ford* (by *Arthur J. LeVasseur* and *George Hogg, Jr.*) and *John J. Reidy, III* for AT&T Communications of Michigan, Inc.

Before: O'CONNELL, P.J., and WILDER and MURRAY, JJ.

PER CURIAM. Appellants Verizon North, Inc., and Contel of the South, Inc., doing business as Verizon North Systems (here referred to collectively as Verizon), appeal as of right an order of appellee Michigan Public Service Commission requiring that they cease and desist from charging rates for intrastate access services at levels that exceed corresponding interstate rates, and refund all excess earnings. We affirm.

I. INTRODUCTION

The Michigan Telecommunications Act (MTA), MCL 484.2101 *et seq.*,[1] regulates rates for various services provided by telecommunications carriers, including access service. "Access service" is defined as "access to a local exchange network for the purpose of enabling a provider to originate or terminate telecommunication services within the local exchange." MCL 484.2102(a). Charges imposed for access services include switching and transport charges, and line charges. Switching and transport charges apply to the use of a telecommunications provider's equipment to route long distance telephone calls from their points of origin to their destinations. Line charges are assessed for the use of a provider's lines to carry long distance calls and include the End User Common Line Charge (EUCLC), which is paid by residential consumers and businesses, and the Carrier Common Line Charge (CCLC), which is paid by other long distance carriers.

The first stated purpose of the MTA is to ensure Michigan citizens "just, reasonable, and affordable" telephone service. MCL 484.2101(2)(a). A "reasonable rate" or a "just and reasonable rate" is "a rate that is not inadequate, excessive, or unreasonably discriminatory. A rate is inadequate if it is less than the total service long run incremental cost [TSLRIC] of providing the service." MCL 484.2102(y).[2] A provider's rates for

---

[1] The MTA is subject to prospective repeal effective December 31, 2005. MCL 484.2604.

[2] The TSLRIC is either the "total forward-looking cost of a telecommunication service, relevant group of services, or basic network component, using current least cost technology that would be required if the provider had never offered the service," or the "total cost that the provider would

access services "shall not be less" than the TSLRIC for each service. MCL 484.2304a(2). Further, the provider of any regulated telecommunications service "shall not charge a rate for the service that is less than the [TSLRIC] of providing the service." MCL 484.2321. However, a provider's intrastate rates for access services "that exceed the rates allowed for the same *interstate* services by the federal government are not just and reasonable." MCL 484.2310(2) (emphasis added).

## II. UNDERLYING FACTS AND PROCEEDINGS

Verizon provides telephone service to more than 800,000 customer lines in Michigan. In July 2001, the Federal Communications Commission (FCC) required Verizon to reduce its rates for its interstate switching and transport access services, as well as its CCLC, and permitted Verizon to increase its interstate EUCLC to offset the forced decrease in other rates. *Verizon North, Inc v Engler*, 205 F Supp 2d 765 (ED Mich, 2002). Unfortunately for Verizon, our Legislature specifically prohibits providers from raising corresponding intrastate end-user line charges beyond the limit the FCC set on May 1, 2000, for similar interstate charges. MCL 484.2310(2). The statute unambiguously decrees that, "[i]n no event" may such charges exceed the May 1, 2000, interstate rate. Verizon was consequentially required to drop some of its intrastate rates to "mirror" interstate rates, but was specifically precluded from raising its intrastate EUCLC rates to offset the loss in revenue. Verizon filed a revised tariff that adjusted its rates for some of its intrastate access ser-

---

incur if the provider were to initially offer the service, group of services, or basic network component." MCL 484.2102(ff).

vices, but some intrastate rates remained higher than their interstate counterparts.

Appellee AT&T Communications of Michigan, Inc. (AT&T), requested that Verizon comply with MCL 484.2310(2) and reduce its rates for intrastate access services to interstate levels. Verizon sought a declaratory ruling from the commission that its rates for intrastate access services did not exceed the levels authorized by the MTA. In return, AT&T filed a complaint with the commission alleging that Verizon was violating MCL 484.2310(2) by improperly charging higher rates for intrastate access services than it charged for corresponding interstate access services.[3] AT&T sought an order requiring Verizon to cease and desist from continuing to violate MCL 484.2310(2), and to refund with interest the excessive amounts it received. In addition, AT&T sought sanctions and requested an award of attorney fees.

The commission observed that MCL 484.2310(2) applied specifically to rates for intrastate access services, whereas MCL 484.2102(y), MCL 484.2304a(2), and MCL 484.2321 dealt with rates for all regulated services, and concluded that MCL 484.2310(2) controlled and prohibited Verizon from charging rates for intrastate access services that exceeded rates for the corresponding interstate services. The commission declined to address Verizon's challenge to the constitutionality of MCL 484.2310(2), and determined that because that statute controlled as a matter of law, it need not determine whether Verizon properly calculated its TSLRIC. The commission ordered Verizon to

---

[3] The commission dismissed Verizon's request for a declaratory ruling, concluding that the issues Verizon raised could be addressed in the adjudication of AT&T's claim.

cease and desist charging higher rates for intrastate access services than it charged for corresponding interstate services, and refund with interest the money it earned from the excessive fees. The commission declined to impose sanctions or to award costs and fees.[4]

### III. ANALYSIS

The standard of review for commission orders is narrow and well-defined. According to MCL 462.25, all rates, fares, charges, regulations, practices, and services prescribed by the commission are presumed, prima facie, to be lawful and reasonable. A party aggrieved by an order of the commission has the burden of proving by "clear and satisfactory" evidence that the order is unlawful or unreasonable. MCL 462.26(8). To establish that a commission order is unlawful, the appellant must show that the commission "failed to follow some mandatory statute or was guilty of an abuse of discretion in the exercise of its judgment." *In re MCI*, 460 Mich 396, 427; 596 NW2d 164 (1999).

To determine the validity of the order, we must first interpret some statutes that appear inconsistent when applied to the facts as Verizon presents them. "The

---

[4] Following the entry of the commission's decision, Verizon filed a complaint for declaratory and injunctive relief in the United States District Court for the Eastern District of Michigan, alleging that MCL 484.2310(2) failed to provide a procedural mechanism to protect its constitutional right to a return on its investment, that the enforcement of MCL 484.2310(2) deprived it of property without a hearing and confiscated property without compensation, and deprived it of equal protection. The federal court dismissed the matter without prejudice, choosing to abstain from adjudicating the constitutional issues presented until the underlying state law issues had been resolved. *Verizon North, supra*.

primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Id.* at 411. "The first step in that determination is to review the language of the statute itself." *Id.* If the language of the statute is unambiguous the reviewing court must presume that the Legislature intended what is stated, "and judicial construction is neither required nor permissible." *Id.* We presume that the Legislature is familiar with the rules of statutory construction and knows of existing laws on the same subject. *Inter Coop Council v Dep't of Treasury*, 257 Mich App 219, 227; 668 NW2d 181 (2003). We also presume that the Legislature knows the state and effect of the interpretation given to its statutes. *Gordon Sel-Way, Inc v Spence Bros, Inc*, 438 Mich 488, 505; 475 NW2d 704 (1991).

Statutes that relate to the same subject or share a common purpose are in pari materia and must be read together as one law. *State Treasurer v Schuster*, 456 Mich 408, 417; 572 NW2d 628 (1998). In construing statutes that address the same subject, the more recently enacted statute takes precedence over the older statute, especially if the more recent statute is also the more specific statute. *Travelers Ins v U-Haul of Michigan, Inc*, 235 Mich App 273, 280; 597 NW2d 235 (1999).

Overarching our analysis is the fact that we "give great weight to any reasonable construction of a regulatory scheme that the PSC is empowered to administer." *Champion's Auto Ferry, Inc v Pub Service Comm*, 231 Mich App 699, 708; 588 NW2d 153 (1998). Especially in matters of policy, we defer to the commission's administrative expertise, and will not substi-

tute our judgment for that of the commission. *Id.* at 707-708.

Verizon argues that the relevant statutes conflict because MCL 484.2321 requires it to charge rates at or above TSLRIC, but MCL 484.2310(2) forces it to drop its rates below TSLRIC levels. Verizon concludes that in this case the ceiling on rates for intrastate access services imposed by MCL 484.2310(2) must yield to the TSLRIC floor provisions in MCL 484.2304a(2) and MCL 484.2321 to accommodate the Legislature's goal of guaranteeing profitability for competing providers. We disagree and affirm.

The commission correctly concluded that MCL 484.2310(2) is more specific and, therefore, prevails over MCL 484.2304a(2) and MCL 484.2321. *Travelers Ins, supra.* The statutes requiring TSLRIC compliance, MCL 484.2304a(2) and MCL 484.2321, do not apply exclusively to rates for intrastate access services, but to all rates charged by a telecommunications provider. The first statute, MCL 484.2304a(2), indicates that providers must not set rates for basic local exchange, toll, and access services below the TSLRIC of each service. Likewise, MCL 484.2321 does not specifically refer to access services, but states that providers must not set rates for any regulated telecommunications service below the TSLRIC of providing each service. In contrast, the "ceiling" statute, MCL 484.2310(2), relates specifically and exclusively to rates for intrastate toll access services, and clearly deems unjust and unreasonable any intrastate rate that exceeds the corresponding rate for identical interstate services.

By deeming relatively higher intrastate rates unjust and unreasonable, MCL 484.2310(2) unambiguously

manifests the specific legislative intent that rates for intrastate toll access services may not exceed rates for the same interstate access services. Over the years, the commission has correctly and consistently extracted this intent from the statute's language. Further, the commission's conclusion that MCL 484.2310(2) prevails over MCL 484.2102(y), MCL 484.2304a(2), and MCL 484.2321 does not render those statutes nugatory. Rather, it merely narrows the scope and applicability of those statutes in those rare instances when a provider's rates for intrastate toll access services at TSLRIC levels would actually exceed corresponding interstate rates. The commission's construction and application of the MTA gives the fullest possible effect to the statutes, avoids conflict to the greatest extent possible, and does not render nugatory any portion of MCL 484.2310(2). *Travelers Ins*, *supra* at 279. Therefore, we will not disturb it.

Finally, the commission's order is not a violation of due process or an unconstitutional taking. In a lengthy hearing below and now on appeal, Verizon has taken full advantage of its opportunity to challenge the required reduction in its rates. Further, a telecommunications provider has no constitutionally protected interest in charging any particular rate for a service or in earning any particular rate of return on its investment. See *Duquesne Light Co v Barasch*, 488 US 299, 310; 109 S Ct 609; 102 L Ed 2d 646 (1989). While a rate order is unconstitutional if it establishes a rate that is so low that it is confiscatory, Verizon has failed to demonstrate that reducing its rates for some of its intrastate toll access services would, in this case, cause it severe financial hardship or otherwise result in confiscatory rates. *Id.* at 310, 312. In

sum, we cannot find the commission's order unconstitutional, unlawful, or unreasonable. MCL 462.26(8).

Affirmed.