LEWIS v BRIDGMAN PUBLIC SCHOOLS

Docket No. 261349. Submitted December 12, 2006, at Lansing. Decided
May 8, 2007, at 9:05 a.m. Leave to appeal sought.

James Lewis, a high school teacher in the Bridgman Public Schools,
gave a student an air gun at school despite a school district policy
calling for the expulsion of any student who possesses a "danger-
ous weapon," which the policy defined to include air guns, while at
school. The school district initiated a proceeding for Lewis's
discharge. After a hearing, a hearing referee at the State Tenure
Commission issued a preliminary decision and order for Lewis's
discharge. Both parties filed exceptions to the hearing referee's
decision. Although the commission agreed with the referee's
findings, it decided that the proper penalty was an unpaid suspen-
sion, given the lack of improper motive by Lewis and given his
significant contributions to the school district as a teacher. The
school district appealed by leave granted.

The Court of Appeals *held*:

1. The State Tenure Commission erred in reviewing the hear-
ing referee's decision de novo. MCL 38.104(5)(m) provides that, if
exceptions are filed, the commission, after a review of the record
and the exceptions, may adopt, modify, or reverse the referee's
preliminary decision and order, and that the commission shall not
hear any additional evidence and its review shall be limited to
consideration of the issue raised in the exceptions based solely on
the evidence contained in the record from the hearing. The
commission's review is limited to addressing the propriety and
manner of the hearing conducted by the referee to assure that the
referee's decision for the discharge or demotion of a tenured
teacher is supported by competent, material, and substantial
evidence. MCL 38.104(4); MCL 24.285.

2. In this case, the hearing referee did not clearly err with
respect to the referee's findings on the issues raised in the
exceptions to the referee's decision.

3. The State Tenure Commission failed to accord the requisite
deference to the hearing referee's determination that Lewis should
be discharged. That determination was relevant to the weight and

creditability of the evidence and testimony presented, was not clearly erroneous, and should have been sustained by the commission.

Reversed and remanded.

FITZGERALD, J., dissenting, would affirm the State Tenure Commission's decision to reduce Lewis's penalty from discharge to suspension. An appeal from a hearing referee's proposed decision subjects all questions of fact and law to commission review and determination de novo. The commission has the authority to reduce the level of discipline imposed by a school board on a tenured teacher from discharge to suspension where the commission finds that the charged misconduct, while proven, was not reasonable and just cause for discharge. On judicial review, the commission's decision must be upheld if, as in this case, it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material, and substantial evidence on the record.

SCHOOLS — TENURED TEACHERS — STATE TENURE COMMISSION — HEARING REFEREES' PRELIMINARY DECISIONS — SCOPE OF REVIEW.

Although it may adopt, modify, or reverse a hearing referee's preliminary decision for the discharge or demotion of a tenured public school teacher, review by the State Tenure Commission of the referee's decision is limited to the issues raised in the exceptions to the hearing referee's decision and to a determination whether the referee's findings are supported by competent, material, and substantial evidence such that the hearing referee did not clearly err with respect to its findings (MCL 24.285, 38. 104[4], and 38.104[5][m]).

*Kalniz, Iorio & Feldstein Co., L.P.A.* (by *Fillipe S. Iorio*), for James Lewis.

*Thrun Law Firm, P.C.* (by *Roy H. Henley*), for Bridgman Public Schools.

Before: SERVITTO, P.J., and FITZGERALD and TALBOT, JJ.

TALBOT, J. Bridgman Public Schools (the school district) appeals by leave granted the State Tenure Commission's rejection of the appointed hearing referee's decision to terminate the employment of James Lewis

as a teacher and imposition of a long-term suspension without pay as the disciplinary consequence for his misconduct. We reverse and remand.

This case arose when Lewis, a high school teacher with 12 years of teaching experience, presented his 18-year old male teaching assistant, a student at the high school, with an air gun as a Christmas gift. Presentation of the gift was made while on school property. The air gun, described as an accurate replica of a Ruger semi-automatic handgun, along with ammunition, was presented to the teaching assistant in the presence of other students. The air gun discharges plastic pellets and has a muzzle velocity of over 250 feet per second, which is comparable to other types of pellet guns and BB rifles. Although the box containing the air gun indicated specific warnings, particularly regarding the need for eye protection, Lewis did not provide such protective gear as part of the student's gift. Lewis did not instruct the student on safe use of the air gun or any dangers regarding its use. In addition, Lewis failed to solicit or secure the advice or permission of school administrators or the student's parents before the selection and presentation of the gift.

The student was uncomfortable with accepting this gift and feared expulsion for having the air gun on school property. This concern was legitimate, as possession of the gun was violative of School District Policy No. 5610.01, which states in relevant part:

> In compliance with State and Federal law, the Board shall expel any student who possesses a dangerous weapon in a weapon-free school zone . . . .

> \* \* \*

> For purposes of this Policy, a dangerous weapon is defined as "a firearm, dagger, dirk, stiletto, knife with a

blade over three (3) inches in length, pocket knife opened
by a mechanical device, iron bar, or brass knuckles" or
other devices designed to or likely to inflict bodily harm,
including, but not limited to, air guns and explosive de-
vices.

The air gun remained in an unlocked storage room in
Lewis's classroom for several weeks before the student
took the air gun home. When the student informed his
parents of the gift, they complained to the school, which
resulted in the school district's decision to proceed with
charges for Lewis's discharge.

Historically, a tenured teacher could appeal a school
board's decision regarding discipline or termination
directly to the State Tenure Commission. MCL 38.121.[1]
The tenure commission was structured to act "as a
board of review for all cases appealed" directly "from
the decision of a controlling board." MCL 38.139.[2] The
assigned standard of review for the conduct of an appeal
from a controlling board required the tenure commis-
sion to "make a de novo decision on all questions of fact
and law . . . [and] . . . review and consider the record
made before the controlling board." *Ferrario v Es-
canaba Bd of Ed,* 426 Mich 353, 367; 395 NW2d 195
(1986) (citations omitted). The "duty" and "authority"
of the tenure commission to conduct a review de novo
was affirmed by the Michigan Supreme Court, which
required the commission "to determine 'anew and as
original questions' all issues of fact and law although
those issues were theretofore decided by the school
board, and to 'make an independent finding of facts,
opinionate upon the same, and enter an order accord-
ingly.' " *Lakeshore Bd of Ed v Grindstaff (After Second
Remand),* 436 Mich 339, 354; 461 NW2d 651 (1990)

---

[1] 1963 PA 242.

[2] 1977 PA 252.

(citations omitted). The Court affirmed the authority of the tenure commission to "vary or reverse the finding of the school board without new material evidence being presented." *Id.* at 352-353.[3]

1993 PA 60 amended the teacher tenure act and significantly altered the procedures to be employed in the discharge or demotion of a tenured teacher and in the appeal of a controlling board's decision. MCL 38.71 *et seq.* 1993 PA 60 initiated the use of a hearing referee as an interim procedural step between a controlling board's decision to proceed with charges against a tenured teacher and review by the tenure commission. If the controlling board's decision is challenged, a hearing referee notifies the parties of a fixed hearing date. MCL 38.104(2). The hearing conducted by the hearing referee is in accordance with the Administrative Procedures Act (APA), MCL 24.271 to 24.287. MCL 38.104(4). The manner for conducting the hearing by the referee (and any subsequent "tenure commission review") is defined in MCL 38.104(5), which effectively mirrors the earlier version of the act defining the basic procedural format for the hearing. MCL 38.104(5)(a) to (e).

Notably, the hearing referee is required to "serve a *preliminary decision and order in writing.*" MCL 38.104(5)(i) (emphasis added). The preliminary order "shall grant, deny, or modify the discharge or demotion specified in the charges." *Id.* If no exceptions are filed by either party to the preliminary decision of the

---

[3] Justice RILEY dissented, arguing that there existed "no express authority granted to the commission in the statute itself to reduce or otherwise modify a penalty imposed by a local board." *Lakeshore, supra* at 359. Justice RILEY opined that the tenure commission, in conducting a review de novo, was restricted to "determining whether the original proceedings before the controlling board were proper, without error, and in accordance with the provisions of the tenure act." *Id.* at 360.

hearing referee "the preliminary decision and order becomes the tenure commission's final decision and order." MCL 38.104(5)(j). However, either party may file "a statement of exceptions to the preliminary decision and order or to any part of the record or proceedings." *Id.*[4] Although MCL 38.139 requires that "[t]he tenure commission shall act as a board of review for all cases appealed from the decision of a controlling board," MCL 38.104(5)(*l*) provides that issues that are not addressed within the filed exceptions are deemed waived and "cannot be heard before the tenure commission or on appeal to the court of appeals." Specifically:

> If exceptions are filed, *the tenure commission, after review of the record and the exceptions, may adopt, modify, or reverse the preliminary decision and order.* The tenure commission *shall not hear any additional evidence and its review shall be limited to consideration of the issues raised in the exceptions based solely on the evidence contained in the record from the hearing.* [MCL 38.104(5)(m) (emphasis added).]

These statutory modifications severely circumscribe the scope of the tenure commission's authority in the appeal process and imply that a de novo standard of review is no longer applicable.

At the time of oral argument for this appeal, this Court raised the issue regarding what the appropriate standard of review is in cases involving the tenure commission. Specifically, this Court noted that the vast majority of caselaw regarding the standard of review used by the tenure commission was decided before the amendment of the applicable statutes by 1993 PA 60. Historically, the tenure commission conducted reviews de novo of controlling board decisions and has, despite

---

[4] Cross-exceptions may also be filed in response to the exceptions or in support of the preliminary decision. MCL 38.104(5)(k).

statutory amendment, continued to adhere to this practice without evaluating the continued propriety of this procedure. Because the amendment made by MCL 38.101 *et seq.* initiated significant procedural changes, including the use of an "administrative law judge" to conduct demotion and termination hearings, MCL 38.104, at oral argument we questioned the propriety of the continued use of a de novo standard of review. When the appellate attorneys for the parties were unable to authoritatively address this issue at oral argument, this Court invited the parties to submit supplemental briefs specifically addressing the appropriate standard of review to be used.

Statutory interpretation comprises a question of law, which this Court reviews de novo. *Ayar v Foodland Distributors,* 472 Mich 713, 715; 698 NW2d 875 (2005). The acknowledged legislative purpose of the teacher tenure act, MCL 38.71 *et seq.,* is to protect teachers' rights and to eliminate arbitrary and capricious demotions or dismissals by school boards. *Goodwin v Kalamazoo Bd of Ed,* 82 Mich App 559, 573; 267 NW2d 142 (1978). MCL 38.101 permits the discharge or demotion of a tenured teacher "only for reasonable and just cause and only as provided in this act." The decision of the hearing referee is not subject to review by the tenure commission, unless exceptions are filed. MCL 38.104(5)(j), (m). Thus, review by the tenure commission is statutorily limited. Not only is the tenure commission precluded from addressing the hearing referee's findings if exceptions are not filed, the commission is also precluded from taking new evidence and must limit its review "to consideration of the issues raised in the exceptions based solely on the evidence contained in the record from the hearing." MCL 38.104(5)(m). Hence, the authority of the tenure commission is highly proscribed in the review process.

These restrictions imply that the tenure commission's review is now limited to addressing the propriety and manner of the hearing conducted by the hearing referee to assure the decision for the discharge or demotion of a tenured teacher is not arbitrary or capricious. This is further supported within the act by reference to the tenure commission's role as a "board of review," and not an adjudicative body. MCL 38.139(1).

It is illogical and contrary to standard agency review procedures, as used in other administrative forums, to suggest that review by the tenure commission would continue to be de novo or that it is permissible for the commission to completely disregard the findings of fact by the hearing referee. Instead, the procedure is now similar to other administrative law proceedings, for which the Michigan Supreme Court has indicated that "the determination as to credibility of the only decision-maker to hear testimony firsthand" cannot be ignored. *Michigan Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 127; 223 NW2d 283 (1974). As such, the hearing referee's determination regarding questions of fact and credibility "should be accorded the appropriate deference" commensurate with "a 'clearly erroneous' standard of review." *Herald Co, Inc v Eastern Michigan Univ Bd of Regents,* 265 Mich App 185, 206; 693 NW2d 850 (2005).

We are aware of recent rulings by this Court that an administrative hearing referee's findings and conclusions comprise merely "a recommendation," suggesting that the tenure commission is "not required to accept the hearing referee's proposed findings even if those findings were supported by substantial evidence." *Dignan v Michigan Pub School Employees Retirement Bd,* 253 Mich App 571, 578; 659 NW2d 629 (2003). See also *Galuszka v State Employees' Retirement Sys,* 265 Mich

App 34, 44-45; 693 NW2d 403 (2004). However, these rulings rely primarily on the APA, MCL 24.281(3), rather than directly on the most recent provisions of the teacher tenure act, MCL 38.104(5)(m).

MCL 38.104(4) requires a hearing referee to conduct the proceeding in conformance with the APA, MCL 24.201 *et seq.*, specifically MCL 24.271 through MCL 24.287, and involves a significant degree of similarity and overlap between provisions of the APA and teacher tenure act. Of particular interest is MCL 24.281(3), which provides, in part: "On appeal from or review of a proposal of decision the agency, except as it may limit the issue upon notice or by rule, shall have all the powers which it would have if it had presided at the hearing." This is consistent with MCL 38.104(5)(m), which permits the tenure commission to "adopt, modify, or reverse the preliminary decision and order" and acknowledges limitations placed on the tenure commission's authority to conduct a review. MCL 24.285 of the APA further provides for the format and content of "[a] final decision or order of an agency" and requires, in part:

> A decision or order shall not be made except upon consideration of the record as a whole or a portion of the record as may be cited by any party to the proceeding and as *supported by and in accordance with the competent, material, and substantial evidence.* [Emphasis added.]

"Statutes that relate to the same subject or share a common purpose are in pari materia and must be read together as one law. In construing statutes that address the same subject, the more recently enacted statute takes precedence over the older statute, especially if the more recent statute is also the more specific statute." *Verizon North, Inc v Pub Service Comm,* 260 Mich App 432, 438; 677 NW2d 918 (2004) (citations omitted).

Notably, the amendment of the teacher tenure act[5] occurred after the adoption of the APA.[6] In addition, it is undeniable that the teacher tenure act comprises the more "specific statute," necessitating that this Court give effect to every word, phrase, and clause in the statute to avoid an interpretation that would render nugatory or surplusage any part of the statute. *Koontz v Ameritech Services, Inc,* 466 Mich 304, 312; 645 NW2d 34 (2002). As such, we determine that MCL 38.104(5) limits the tenure commission's scope of authority in conducting a review and recognizes limitations on agency authority, thereby precluding continued use of a de novo standard of review.

In this case, the hearing referee, after conducting a four-day hearing, issued a preliminary decision determining that the school district had proven reasonable and just cause to terminate Lewis's employment. Both parties filed exceptions to the hearing referee's preliminary decision. The tenure commission subsequently issued a decision and order addressing Lewis's exceptions to the hearing referee's ruling. Specifically, Lewis asserted that the hearing referee's finding that he demonstrated "a serious lack of professional judgment" was not supported by a preponderance of the evidence and was in conflict with prior commission rulings. However, the tenure commission concluded that the findings of the hearing referee "clearly support his determination that [Lewis] demonstrated a serious lack of professional judgment" given his failure to consider "possible ramifications" of giving the gift to the student while on school property, particularly given the "close resemblance" of the air gun "to an actual semi-automatic pistol." The tenure commission also rejected

---

[5] 1993 PA 60.

[6] 1969 PA 306.

Lewis's exception to the hearing referee's determination that his conduct put the student at risk of expulsion, stating:

> We concur with [the school district] analysis of the expulsion policy . . . . Hence, the policy requires the Board to expel a student in possession of a dangerous weapon, expressly including an air gun, and allows the Board, in its discretion, to withhold expulsion if the student proves one of the exemptions to the Board's satisfaction.

In addressing another exception, in which Lewis challenged the hearing referee's determination that the air gun could "reasonably be characterized as a weapon" in accordance with the school district's weapons policy, the tenure commission again concurred with the hearing referee's determination that the air gun met the definitional requirements of a weapon as elucidated in that policy. In addition, the tenure commission agreed with the hearing referee that the mere fact that the air gun constituted a realistic plastic replica of a Ruger P-series semi-automatic pistol did not preclude a finding that the air gun also fell within the characterization of a weapon as defined by the weapons policy.

The tenure commission summarily rejected Lewis's argument that the school district failed to prove a violation of the weapons policy because expert testimony established that the air gun was not capable of inflicting serious bodily harm or property damage as contemplated by the specific inclusion of air guns within the policy's definition of a weapon. Lewis next took exception to the hearing referee's determination that the air gun could have led to a "dangerous law enforcement response" as "speculative" and "far-fetched." Affirming the hearing referee's determination, the tenure commission noted that the air gun was left unsecured in a classroom closet for several weeks

and that Lewis failed to provide the student with any instruction regarding removal of the air gun from school property. The tenure commission indicated its concern regarding testimony that a report of a student with a weapon in the school would immediately initiate a call to the police, which could result in a serious incident, particularly given the close resemblance of the air gun to a real semi-automatic pistol.

Lewis also objected to consideration of prior incidents of his alleged misconduct, which were unrelated to the current charges, as violating tenure commission precedent and constituting impermissible double jeopardy. However, the tenure commission responded, noting in relevant part:

> It is well established that the consideration of prior incidents to determine the severity of penalty to be imposed for current charges is permissible and does not violate principles of double jeopardy . . . . In this case, all of the prior incidents with the possible exceptions of the reprimands for tardiness and sleeping overnight in the school building relate to lapses of appellant's professional judgment and were relevant for that purpose in determining the appropriate penalty.

The tenure commission determined, despite the unavailability of a formal grievance procedure for Lewis to challenge some of the previous incidents of misconduct, that he did have sufficient "opportunity to challenge the prior incidents" when they occurred.

Lewis also challenged the hearing referee's determination that he exhibited a "history of significant lapses of judgment" as unsupported by the record and inappropriately dependent on the hearing referee's use of prior incidents of misconduct as an "overriding factor in upholding discharge." The tenure commission indicated its concurrence "with the hearing referee's conclusion

that they are relevant in the determination of the appropriate level of discipline" and that "[i]n sum . . . we find the evidence establishes the relevancy of the prior incidents in consideration of the level of penalty and to establish [Lewis's] history of lapses of professional judgment." Lewis also took issue with the hearing referee's determination that his "serious lack of judgment" had an "adverse effect" on the school community. Again, the tenure commission sided with the hearing referee, determining that "it was not necessary for [the school district] to establish adverse effect. In cases involving teacher misconduct in the school or involving students, disciplinary action may be taken without a showing of adverse effect where the teacher's conduct is obviously inappropriate . . . . [W]e concur with the [hearing referee's] finding that the evidence nonetheless establishes adverse effect."

The only issue raised by Lewis with which the tenure commission concurred was the hearing referee's finding for discharge from his employment. Evaluating identified factors, the tenure commission concluded

> that [Lewis's] misconduct was both egregious and a clear violation of the conduct expected of a teaching professional. We are also troubled that [Lewis] does not appear to appreciate the seriousness of his present misconduct even now. It is also disconcerting that previous intervention by [the school district] to correct other, less serious lapses of judgment by [Lewis] have failed to prevent this latest example of extremely poor judgment.

Despite the tenure commission's agreement with the hearing referee's findings, it determined that the proper penalty was an unpaid suspension, given the lack of evidence of an "improper motive" by Lewis and given his "significant contributions to the District" as a teacher. However, the hearing referee did consider these

factors in determining discharge to be the appropriate penalty for Lewis's misconduct, stating:

> There was undisputed testimony of [Lewis's] significant contributions to the Bridgman school community, and I cannot conclude from the evidence that his motive in this instance was improper. Nevertheless, given [Lewis's] history of significant lapses in judgment, the egregious violation of professional decorum in his choice of . . . gift, and the school district's legitimate concern to maintain a safe environment free of weapons, including replica weapons, I am persuaded that discharge is the appropriate remedy in this case. I find that this is the sole remedy which both reflects the seriousness of [Lewis's] conduct and serves as a clear message that such conduct will not be tolerated.

Because this finding was relevant to the weight and credibility of evidence and testimony, the tenure commission erred in failing to give deference to the hearing officer's findings. *VanZandt v State Employees' Retirement Sys,* 266 Mich App 579, 588; 701 NW2d 214 (2005).

This Court reviews the tenure commission's findings to determine whether there was "competent, material and substantial evidence to support the commission's finding." *Birmingham School Dist v Buck (On Remand),* 211 Mich App 523, 524; 536 NW2d 297 (1995); Const 1963, art 6, § 28. We conclude that the tenure commission exceeded the bounds of its authority by continuing to use a de novo standard of review rather than a clear error standard, and by failing to accord sufficient deference to the hearing referee's determinations as the fact-finder as required by the procedural amendments of 1993 PA 60. Therefore, in light of the tenure commission's concurrence with the hearing referee's substantive findings and conclusions, we find

that the tenure commission erred in altering the hearing referee's findings for termination of Lewis's employment.

Reversed and remanded. We do not retain jurisdiction.

SERVITTO, P.J., concurred.

FITZGERALD, J. (*dissenting*). Before the amendment of the teacher tenure act, MCL 38.71 *et seq.*, by 1993 PA 60, if a controlling board decided to proceed with charges against a teacher with continuing tenure, the controlling board conducted the initial hearing and rendered a decision on the charges. MCL 38.104. The controlling board had "the power to subpoena witnesses and documentary evidence . . . ." MCL 38.104(g). *Any* decision by the controlling board could then be appealed to the State Tenure Commission under MCL 38.121. The Michigan Supreme Court and this Court have continuously held that appeal from a school board decision subjects all questions of fact and law to tenure commission review and determination de novo. See, e.g., *Lakeshore Bd of Ed v Grindstaff*, 436 Mich 339, 354; 461 NW2d 651 (1990); *Ferrario v Escanaba Bd of Ed*, 426 Mich 353, 367; 395 NW2d 195 (1986); *Birmingham School Dist v Buck*, 204 Mich App 286, 292-293; 514 NW2d 528 (1994). In *Lakeshore Bd of Ed*, the Court affirmed the authority of the tenure commission to "vary or reverse the finding of the school board without new material evidence being presented." *Id.* at 352-353.

Under MCL 38.121, as amended by 1993 PA 60, "A teacher who has achieved continuing tenure status may appeal to the tenure commission any decision of a controlling board under this act, *other than a decision governed by article IV on discharge or demotion of a*

*teacher on continuing tenure . . . .*" (Emphasis added.)
Article IV governs only charges filed specifying a pro-
posed outcome of either "discharge" or "demotion" and
is composed of MCL 38.101 through 38.104. Where a
controlling board files charges specifying a proposed
outcome of either discharge or a specific demotion, a
teacher with continuing tenure may contest the control-
ling board's decision to proceed upon the charges by
filing a claim of appeal with the tenure commission.
MCL 38.104(1). An initial hearing is no longer con-
ducted by the controlling board but, rather, by an
administrative law judge (ALJ)[1] in accordance with the
Administrative Procedures Act (APA), specifically MCL
24.271 to MCL 24.287. MCL 38.104(4). The ALJ "may
subpoena witnesses and documentary evidence." MCL
38.104(5)(f). The ALJ is required to "serve a prelimi-
nary decision and order in writing." The preliminary
decision and order "shall grant, deny, or modify the
discharge or demotion specified in the charges." MCL
38.104(5)(i). If no exceptions are filed by either party to
the preliminary decision of the ALJ, "the preliminary
decision and order becomes the tenure commission's
final decision and order." MCL 38.104(5)(j). However,
either party may file a "statement of exceptions to the
preliminary decision and order or to any part of the
record or proceedings." *Id.*[2] Issues that are not ad-
dressed within the filed exceptions are deemed waived
and "cannot be heard before the tenure commission or
on appeal to the court of appeals." MCL 38.104(5)(*l*). If
exceptions are filed, "the tenure commission, after
review of the record and the exceptions, *may adopt,*

---

[1] I acknowledge that the proper title for an administrative law judge is
now "hearing referee." However, for purposes of clarity and in accord
with the statutory language, I use the former designation.

[2] Cross-exceptions may also be filed in response to the exceptions or in
support of the preliminary decision. MCL 38.104(5)(k).

*modify, or reverse the preliminary decision and order.*
MCL 38.104(5)(m). The tenure commission shall not hear
any additional evidence and its review shall be limited to
consideration of the issues raised in the exceptions based
solely on the evidence contained in the record from the
hearing." *Id.*

The majority concludes that, because the tenure
commission must limit its review "to consideration of
the issues raised in the exceptions based solely on the
evidence contained in the record from the hearing," the
tenure commission's review "is now limited to address-
ing the propriety and manner of the hearing conducted
by the hearing referee to assure the decision for the
discharge or demotion of a tenured teacher is not
arbitrary or capricious."[3] *Ante* at 442. In support of this
conclusion, the majority concludes that it would be
"illogical and contrary to standard agency review pro-
cedures . . . to suggest that review by the tenure com-
mission would continue to be de novo or that it is
permissible for the commission to completely disregard
the findings of fact by the [ALJ]." *Id.* But with the
amendment of the statute, the ALJ has simply replaced
the controlling board as the entity initially charged with
conducting a hearing, taking evidence, and rendering a
preliminary decision on the charges. Indeed, the major-
ity recognizes that recent rulings by this Court suggest
that an "administrative hearing referee's findings and
conclusions comprise merely 'a recommendation,' sug-
gesting that the tenure commission is 'not required to
accept the hearing referee's proposed findings even if
those findings were supported by substantial evi-

---

[3] The majority also notes that the amended act refers to the tenure
commission's role as a "board of review." MCL 38.139. However, before
amendment the act also referred to the tenure commission role as a
"board of review" in MCL 38.139.

dence.' " *Id.* See, e.g., *Dignan v Michigan Pub School Employees Retirement Bd,* 253 Mich App 571 578; 659 NW2d 629 (2003); see also *Galuszka v State Employees' Retirement Sys,* 265 Mich App 34, 44-45; 693 NW2d 403 (2004). And MCL 24.281(3) of the APA states, in part, that "[o]n appeal from or review of a proposal of decision the agency, except as it may limit the issue upon notice or by rule, *shall have all the powers which it would have if it had presided at the hearing.*" (Emphasis added.)

Accordingly, I disagree with the majority's suggestion that the tenure commission's de novo standard of review on appeal is no longer applicable because an ALJ, rather than a controlling board, conducts the initial hearing pursuant to the amended act. I would hold that an appeal from an ALJ's proposed decision subjects all questions of fact and law to tenure commission review and determination de novo.

"Discharge or demotion of a teacher on continuing tenure may be made only for reasonable and just cause and only as provided in this act." MCL 38.101. Pursuant to Const 1963, art 6, § 28 and MCL 24.306(1)(d), a final decision of the tenure commission is subject to direct judicial review and must be upheld if it is not contrary to law, is not arbitrary, capricious, or a clear abuse of discretion, and is supported by competent, material, and substantial evidence on the whole record. *Beebee v Haslett Pub Schools (After Remand),* 406 Mich 224, 231; 278 NW2d 37 (1979); *Comstock Pub Schools v Wildfong,* 92 Mich App 279, 284-285; 284 NW2d 527 (1979). The task of the appellate court is "limited to a review of the record to determine whether there was competent, material and substantial evidence to support the tenure commission's finding" of reasonable and just cause to reduce Lewis's discipline from discharge to lengthy suspension without pay. *Beebee, supra*

at 231. "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance." *Parker v Bryon Ctr Pub Schools Bd of Ed*, 229 Mich App 565, 578; 582 NW2d 859 (1998). This Court's review is not de novo; however, it does involve a degree of qualitative and quantitative evaluation of all the evidence that the commission considered, rather than just those portions of the record supporting the commission's decision. *Ferrario, supra* at 367; *Widdoes v Detroit Pub Schools,* 242 Mich App 403, 408-409; 619 NW2d 12 (2000).

The Bridgman Public Schools (the school district) first argues that the tenure commission's reduction in discipline was unsupported by competent, material, and substantial evidence on the whole record. The school district further asserts that, as a matter of public policy, the tenure commission's decision "sets a dangerous precedent essentially providing Michigan teachers immunity from termination for even the most egregious and dangerous offenses" and "has the effect of holding teachers to a lower standard of conduct than their students."

The school district has failed to demonstrate that the tenure commission's decision is unsupported by substantial evidence on the whole record. Indeed, it is striking that the ALJ and the tenure commission both conducted comprehensive qualitative and quantitative evaluations of all the evidence, yet came to differing conclusions on the appropriate penalty. Nonetheless, in *Lakeshore, supra,* the Court held that the tenure commission has the authority to reduce the level of discipline imposed by a school board on a tenured teacher from discharge to suspension where it finds that the charged misconduct, while proven, was not reasonable

and just cause for discharge. The tenure commission found discharge was not warranted on the basis of Lewis's "lengthy and positive contribution to teaching" and the "principle of progressive discipline as [Lewis's] only previous formal discipline was a two-day unpaid suspension." Both of these contentions are well supported by the record. Several of Lewis's former students and several of his fellow faculty members testified that Lewis is an exceptional teacher and coach who has made a great contribution to the school. While reasonable minds might disagree with the tenure commission's decision, it was supported by competent, material, and substantial evidence on the whole record.

The tenure commission, in its use of escalating discipline, has taken into consideration concerns such as the school district's argument regarding Lewis's history of poor judgment. Only one of the prior incidents in Lewis's record was considered serious enough to merit discipline beyond a reprimand, and that discipline was only a two-day suspension. Here, a two-day suspension of a first offense followed by over a year suspension for a second offense is a reasonable escalation representing the seriousness of the second offense. Ultimately, the question is whether a reasonable person could conclude that the commission's decision to reduce petitioner's penalty from discharge to suspension was adequately supported. *Parker, supra.* Given the evidence of Lewis's lengthy and overall positive performance as a teacher, it was reasonable for the tenure commission to conclude that discharge was too harsh a sanction in this case.

The school district also argues that reinstating Lewis to his teaching position would be against public policy because it would essentially set the bar on teacher misconduct so low that it would be impossible to fire a

teacher. This argument is without merit. More serious misconduct by a teacher than that at issue can easily be imagined, and nothing in the tenure commission's reasoning in this case would bar discharge for more severe conduct. Further, the long-term suspension ultimately imposed on Lewis seems apt to deter other teachers from engaging in conduct similar to Lewis's underlying conduct in this case.

I would affirm.