WIDDOES v DETROIT PUBLIC SCHOOLS

Docket No. 213153. Submitted July 5, 2000, at Detroit. Decided September 1, 2000, at 9:00 A.M.

The Detroit Public Schools terminated the employment of Paul Widdoes as a tenured teacher for alleged use of excessive force after he grabbed the arm of a student and pulled the student toward a gymnasium's door when the student did not immediately comply with Widdoes' directive to leave the gym so Widdoes could prepare the gym for a physical education class that did not include the student. The State Tenure Commission upheld the termination, determining that Widdoes had inflicted corporal punishment in violation of § 1312 of the Revised School Code, MCL 380.1312; MSA 15.41312. On Widdoes' petition for review, the Wayne Circuit Court, Michael J. Callahan, J., reversed the commission's decision after concluding that the decision was not supported by competent, material, and substantial evidence. On the respondent's appeal by leave granted, the Court of Appeals, BANDSTRA, P.J., and MARKMAN and M. D. SCHWARTZ, JJ., affirmed the circuit court's judgment after determining that the respondent failed to establish that the petitioner had inflicted physical pain so as to have violated § 1312. However, the Court of Appeals remanded the case to the commission for a determination whether the petitioner violated any policy of the respondent that prohibited the use of excessive force. 218 Mich App 282 (1996). On remand, the commission determined that the petitioner had violated a provision in the collective bargaining agreement between the petitioner's union and the respondent that prohibited the use of severe, cruel, or excessive punishment. The circuit court reversed the commission's decision after concluding that the decision was not supported by competent, material, and substantial evidence. The respondent appealed by leave granted.

The Court of Appeals *held*:

The circuit court correctly reversed the commission's decision. The commission's determination that the petitioner acted totally out of proportion to the student's actions so as to have violated the policy against excessive force is not supported by competent, material, and substantial evidence. The evidence before the commission established that the petitioner merely exhibited impatience

in dealing with a student who refused to comply with the petitioner's request and who behaved inappropriately, that the petitioner did not hurt the student, and that the student later apologized to the petitioner for his behavior. The amount of physical force used by the petitioner was within the limits of MCL 380.1312(4)(a); MSA 15.41312(4)(a), which allows a teacher to use reasonable physical force on a student as necessary to maintain order and control and allows a teacher to restrain or remove a pupil whose behavior is interfering with the orderly exercise of a school function, if the pupil has refused to comply with a request to refrain from further disruptive acts.

Affirmed.

SCHOOLS — STATE TENURE COMMISSION — APPEAL.

A court reviewing a decision of the State Tenure Commission must determine whether the record contains competent, material, and substantial evidence to support the commission's findings; substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla but may be substantially less than a preponderance.

*Skupin & Lucas, P.C.* (by *Joseph F. Lucas*), for the petitioner.

*Lynne M. Metty*, for the respondent.

Before: WHITE, P.J., and DOCTOROFF and O'CONNELL, JJ.

O'CONNELL, J. In *Widdoes v Detroit Public Schools*, 218 Mich App 282, 287; 553 NW2d 688 (1996), a panel of this Court affirmed a circuit court's determination that petitioner did not violate the corporal punishment prohibition of the Revised School Code, MCL 380.1312; MSA 15.41312. This Court nevertheless remanded to the State Tenure Commission for a determination whether petitioner violated any policy of respondent prohibiting the use of excessive force. *Id.* at 288. The present appeal arises from the commission's determination that petitioner did act contrary to an excessive force policy that respondent had

in effect during the relevant period. The circuit court reversed, finding that petitioner's actions did not constitute excessive force. We agree with the circuit court's ruling and affirm.

We adopt the facts as set forth in this Court's earlier opinion:

> The incident at issue occurred in February 1990. An eighth grade student, who helped clean the gymnasium after it was used as a lunchroom, played dodgeball with several other students. A custodian had told them they could play, although the student knew that he should not be playing in the gym at that time. Petitioner entered the gym and told the students to leave. The student attempted to retrieve his shirt. Petitioner grabbed him by the arm and pulled him toward the door, telling him that he had to leave. The student tried to get away, called petitioner a "white bitch," threatened to hit him, and made an obscene gesture. The student later apologized to petitioner and testified that petitioner did not use "real bad force" or "hurt him in any way."[1]
>
> In June 1990, petitioner received written charges of using excessive force that stated in pertinent part:
>
> "On February 23, 1990, you used inappropriate and excessive force on a student . . . .
>
> "This is at least the second incident in which you have used force on a student in an unprofessional manner.
>
> "These charges, if proven, constitute just and reasonable cause for disciplinary action. Therefore, accordingly, I am recommending that you be suspended without pay for three (3) weeks."

---

[1] The panel cited the State Tenure Commission's factual findings. The commission, however, accepted the version of the events that the witnesses for respondent presented. Petitioner, on the other hand, testified that he entered the gym and asked the boys to put the balls away and leave. The complaining student then responded with a threat to "blow" petitioner's face away, obscene language, and a gesture that involved reference to the student's groin area. At that point, petitioner decided to physically remove the student from the gym.

At the December 4, 1990, hearing regarding these charges, respondent's counsel requested termination. In a December 18, 1990, unanimous decision, the Detroit Board of Education stated that it found sufficient evidence to support the charge of excessive use of force and immediately terminated petitioner's employment.

Petitioner then appealed to the State Tenure Commission. The commission denied the petition [in July 1993] by a three to two majority. It held:

"Here the great weight of the evidence established that [petitioner] did . . . unlawfully inflict corporal punishment on [the student] in violation of MCL 380.1312 [MSA 15.41312]. [Petitioner's] response was totally out of proportion to [the student's] action, which consisted merely of walking across the gym to get his shirt instead of leaving the gym immediately as [petitioner] commanded. . . . As a teacher, [petitioner] was charged with the responsibility of controlling his temper and using appropriate methods of discipline. His use of corporal punishment violated not only the state statute but also the policy of [respondent] which was based on the statute." [Widdoes, supra at 283-285.[2]]

Petitioner appealed to the circuit court, which reversed the commission's decision, citing the lack of competent, material, and substantial evidence to support the commission's decision. Id. at 285. This Court agreed, after concluding that respondent failed to establish the "infliction of physical pain" element of MCL 380.1312; MSA 15.41312, but nevertheless remanded to the commission for consideration whether petitioner violated any policy of respondent that prohibited the use of excessive force. Id. at 287-288. The panel also recommended that the commission review

---

[2] The commission, citing similar incidents involving petitioner in the past, determined that respondent established just and reasonable cause to terminate petitioner. Our review in this case is limited to the facts arising out of the February 1990 incident.

certain other issues that petitioner raised below, but which the commission did not address. Petitioner had argued that respondent increased its initial recommendation from a three-week suspension to outright termination in an effort to unconstitutionally chill his right to a hearing. *Id.* at 288, n 1. Petitioner had also contended that respondent did not comply with the time requirements set forth in MCL 38.102; MSA 15.2002 for filing such charges. *Id.* Finally, this Court reversed the circuit court's order requiring respondent to pay petitioner's attorney fees. *Id.* at 290.

On remand to the State Tenure Commission, respondent argued that it had a policy forbidding the use of excessive force and that, unlike the corporal punishment statute, the policy did not require respondent to show that petitioner deliberately inflicted pain on the student. The commission agreed and determined that petitioner violated the excessive force policy during the February 1990 incident. Regarding petitioner's argument that respondent violated his due process rights when it failed to notify him before the hearing that it sought his dismissal, the commission concluded that petitioner was not legally entitled to notice of the proposed penalty. The commission also found no evidence that respondent increased its recommended penalty in retaliation for petitioner's request for a hearing.[3]

Petitioner again appealed to the circuit court, and the court again reversed, citing the lack of competent, material, and substantial evidence that petitioner used excessive force on the student. The court also con-

---

[3] The commission also determined that principles of res judicata, collateral estoppel, double jeopardy, and law of the case did not apply to bar the second hearing. Those rulings are not at issue in this appeal.

cluded that respondent violated petitioner's due process rights when it increased its original recommendation for a three-week suspension to dismissal without notifying him. The court ordered respondent to reinstate petitioner as a tenured teacher and awarded him "all back salary and the value of all employment benefits accrued since the termination of his employment in January, 1991."

This Court granted respondent's application for leave to appeal. Respondent now argues that the circuit court erred in two respects. First, respondent asserts that competent, material, and substantial evidence did support the State Tenure Commission's finding that petitioner violated respondent's excessive force policy. Second, respondent urges us to conclude that the circuit court committed legal error when it ruled that respondent violated petitioner's due process rights. We conclude that the circuit court did not err with respect to the first issue. Because respondent's first issue is dispositive of this appeal, we do not address the due process issue.[4]

On appeal from the State Tenure Commission, the function of the reviewing court is to determine whether the record contained competent, material, and substantial evidence to support the commission's findings. *Ferrario v Escanaba Bd of Ed*, 426 Mich 353, 367; 395 NW2d 195 (1986). "Substantial evidence is that which a reasonable mind would accept as adequate to support a decision; it is more than a scintilla

---

[4] Further, we decline to address constitutional issues when we can resolve an appeal on a nonconstitutional ground. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993); *MacLean v State Bd of Control for Vocational Ed*, 294 Mich 45, 50; 292 NW 662 (1940).

but may be substantially less than a preponderance." *Parker v Byron Center Public Schools Bd of Ed*, 229 Mich App 565, 578; 582 NW2d 859 (1998). Further, although "deference must be given to the commission's determination of the credibility of witnesses who appeared before it," courts must "conduct an independent assessment of whether the commission's determination of the credibility of the parties is supported by the evidence." *Id.* Our review is not de novo; however, it does involve a degree of qualitative and quantitative evaluation of all the evidence that the commission considered, rather than just those portions of the record supporting the commission's decision. *Ferrario, supra* at 367; *MERC v Detroit Symphony Orchestra, Inc*, 393 Mich 116, 124; 223 NW2d 283 (1974).

At the commission hearing, respondent relied on a provision addressing the subject of discipline contained in the collective bargaining agreement (CBA) between respondent and the Detroit Federation of Teachers, effective July 1, 1987, to June 30, 1990. Paragraph M of the discipline section provided:

> It is general policy to expect that teachers will maintain discipline by means other than the use of corporal punishment. Therefore, use of corporal punishment as a routine measure is not contemplated. This policy does not prohibit corporal punishment (as provided by [the School Code]) but does restrict its use to those cases in which there is no adequate substitute treatment. However, a distinction must be made between physical restraint, which is occasionally necessary to keep a young person from injuring himself/herself or others, and punishment, which is utilized to discourage repetition of misbehavior.
>
> Punishment which, in the judgment of the Superintendent is more severe than that which might be administered by a

reasonable parent; which is cruel or excessive; which is more severe than indicated by the gravity of the offense, or the apparent motive and disposition of the offender; which is excessive with respect to the sex, size, or physical strength of the pupil; which results in lasting pain or injury; or which is administered wantonly or from malice or passion, is prohibited in the Detroit schools.

Petitioner argued before the commission that these provisions were a mere reiteration of the corporal punishment statute. The State Tenure Commission disagreed. It interpreted the quoted language as expressing a policy against the use of excessive force, except when absolutely necessary. It concluded that although lasting pain or injury was a factor to consider in determining whether a teacher used excessive force, it was not a necessary element of proof, and reasoned that the absence of a physical pain element distinguished the policy from the corporal punishment statute.

The commission also rejected petitioner's argument that his actions constituted mere restraint of the student, rather than force or punishment. The commission's opinion noted that one of petitioner's explanations for his actions was that he sought to discourage repetition of the student's behavior, and concluded that petitioner inflicted "punishment" as used in the CBA. Citing its prior conclusion that petitioner's actions were the result of his loss of temper and were excessive under the circumstances, the commission ruled that petitioner violated respondent's excessive force policy.

For purposes of this appeal, we assume, but do not decide, that the quoted language from the CBA established that respondent had a policy prohibiting exces-

sive force that was distinct from the corporal punishment statute. Nevertheless, we conclude that petitioner did not violate the policy. The circuit court relied on its prior ruling and found that the record did not contain competent, material, and substantial evidence that petitioner employed excessive force on the student. We agree with the circuit court's conclusion.

On its face, the policy appeared to permit the use of restraint to prevent a student from causing injury to others or to himself. Petitioner does not contend that he was attempting to prevent injury to the student or to others in the gym. Petitioner's position below was that he sought to discourage the student from repeating the behavior. During the State Tenure Commission hearing following this Court's remand, the commission referred to its first ruling, which concluded that petitioner's response was "totally out of proportion" to the student's actions. Even giving the required deference to the commission's factual findings, we fail to see how the commission found excessive force in petitioner's removing the student from the gym by his arm.

The policy referred to punishment that was "severe," "cruel," and "excessive." In our view, petitioner's escorting the student out of the gym by his arm did not rise to the level of being severe, cruel, or excessive, within any reasonable definition of those terms. We also note that the student admitted that petitioner did not hurt him in any way. The policy also prohibited punishment that was "administered wantonly, or from malice or passion . . . ." We need not address whether petitioner's actions were the result of wantonness, malice, or passion, however, because we do not consider petitioner's actions to

constitute "punishment," let alone "excessive force." While the lower court record contained some evidence that petitioner was less than patient with the student's failure to immediately comply with his request that the boys leave the gym, we cannot agree with the State Tenure Commission's conclusion that petitioner's response was "totally out of proportion" to the student's actions. The degree of physical force that petitioner used on the student was slight.

MCL 380.1312(4); MSA 15.41312(4) provides in part:

> A person employed by or engaged as a volunteer or contractor by a local or intermediate school board or public school academy may use reasonable physical force upon a pupil as necessary to maintain order and control in a school or school-related setting for the purpose of providing an environment conducive to safety and learning.

The section further permits the use of physical force in order to "restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district or public school academy functions within a school or at a school-related activity, if that pupil has refused to comply with a request to refrain from further disruptive acts." MCL 380.1312(4)(a); MSA 15.41312(4)(a).

The evidence before the commission established that, at a minimum, petitioner directed the three boys to leave the gym so that he could teach his physical education class. Petitioner testified at the first school board hearing, in December 1990, that on numerous occasions he had heard the boys using profane language in the gym. He would ask them to leave, but they would always return. The complaining student did not immediately comply with petitioner's request,

which led petitioner to grab the student's arm and pull him toward the door in order to expedite the student's exit. During his removal, the student threatened petitioner, used obscene language, and made obscene gestures. The student admitted that he knew that he should not be playing in the gym at the time in question. On the basis of the record, we cannot agree with the commission's conclusion that petitioner's actions were "totally out of proportion" to the student's actions. The evidence produced during the commission hearing at best established that petitioner exhibited impatience in dealing with the student. At worst, petitioner found himself having to deal with a student who refused to obey his request and who behaved in a manner totally inappropriate for the school setting. Also significant to us is the fact that petitioner did not hurt the student and the student later apologized to petitioner for his behavior. From our perspective, the school board was simply too quick to terminate petitioner's employment over a harmless incident.[5]

---

[5] Indeed, the dissenting opinion to the commission's July 1993 ruling properly assessed this case:

I respectfully dissent from the majority decision. The evidence strongly suggests that the chronology of events began with the appellant taking [the student] by the arm to escort him from the gym. It escalated when [the student] called the appellant a white bitch and sought to extricate himself from appellant's grip. This is what the security guard observed. During this encounter, [the student] admitted that he gave the appellant a finger wave. Tempers obviously flared. Significantly, [the student] acknowledged he was neither physically injured nor, for that matter, even hurt! As this occurred in front of some of his peers, [the student], was, perhaps, embarrassed. That, however, was the total extent of his injury. While physical injury or pain is not the sole criterion for determining the use of excessive force, it is certainly an important factor. Based upon the record, particularly the account of the alleged victim himself, I am unable to find that appellant used excessive force

The commission's ruling disturbs us. This Court, in respondent's first appeal in *Widdoes, supra* at 288, generously remanded to allow the commission to determine whether petitioner violated any excessive force policy that respondent had in effect at the time of the incident. The commission apparently interpreted the invitation to consider the issue as a mandate that it find another ground to terminate petitioner. We are mindful that a school board must strike a balance between protecting students from the imposition of excessive force and its teachers' interest in maintaining order in the classroom. Nevertheless, the commission's decision in this case indicates to us that the balance has swung too far in the wrong direction. To affirm the commission's determination in this case would risk rendering teachers powerless to maintain classroom order in any meaningful way.

We acknowledge that school boards have within their power the ability to define disciplinable acts and to sanction teachers when they violate a school board policy. *Widdoes, supra* at 287. However, we also believe that school boards must apply their policies in a reasonable manner. The general rule allowing teachers to impose reasonable force on students predates the American Revolution. *Ingraham v Wright*, 430 US 651, 661; 97 S Ct 1401; 51 L Ed 2d 711 (1977). Numerous are the forces that intrude on the classroom to disturb the learning environment, and teachers must be able to deal with such problems promptly and decisively. Sadly, the lack of respect that students have for their teachers and for each other has in

---

in the skirmish. At most he exercised poor judgment. But this was not the basis for his discipline.

recent years become a national fact. Decisions such as those of respondent and the State Tenure Commission in this case have the effect of furthering, rather than reversing, this trend.

The mission of the public school system is to "impart to students committed to its educational care and supervision the learning necessary to enable them to lead useful and productive lives . . . ." *Davis v Ann Arbor Public Schools*, 313 F Supp 1217, 1225 (ED Mich, 1970). "They must not only provide a suitable environment for study, and for relaxation, but must also uphold and protect the authority reposed in the teachers in the institution." *Id.* at 1226. Decisions such as those of respondent and the commission in this case, to terminate petitioner over a harmless incident, do nothing to emphasize to students the necessity to give deference and respect to their teachers and other authority figures in school. Students instead learn that they are essentially untouchable. Further, teachers who take notice of the decisions of their school board and the State Tenure Commission may become uncertain regarding whether any steps they pursue to control or discipline a student will result in their own suspension or termination. This uncertainty results in indecision, apathy, and fear. Rather than risk making the teachers of our state afraid to take appropriate action against students who fail to follow their direction, today we draw the line and affirm the trial court's order reversing the State Tenure Commission's decision. On the facts of this case, the school board would have been better served to support, rather than punish, petitioner.

Affirmed.

DOCTOROFF, J., concurred.

WHITE, P.J. I concur in the result only.