*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

QC, Minor, by Guardian JENNIFER ANN COKER,

Plaintiff-Appellant,

UNPUBLISHED
November 12, 2024
3:36 PM

v

No. 366791
Kalamazoo Circuit Court

BRANDON TYLER LUKES and KALAMAZOO
PUBLIC SCHOOL DISTRICT,

LC No. 2022-000284-NO

Defendants-Appellees.

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Plaintiff appeals as of right an order granting defendants' motion for summary disposition pursuant to MCR 2.116(C)(7) and (10). We affirm.

This case arises out of defendant Kalamazoo Central High School (KCHS) Dean of Students Brandon Tyler Lukes's attempt to remove QC, then a student at KCHS, from a large student fracas in the school cafeteria. Most of the relevant circumstances were recorded on video that were submitted to the trial court as exhibits.

Following a fight between several KCHS students that was stopped by the KCHS assistant principal, four students who were engaged in that fight joined QC near the cafeteria and entered with her as a group. QC then began arguing with another student, during which QC jumped up and down and continued to move closer and closer to the other student, who was backing away. At that time, after receiving a call for assistance from a campus safety officer, Lukes entered the cafeteria and moved his way through the unruly crowd toward QC.[1]

Lukes approached QC and instructed her to leave the area. Lukes turned his back to QC as she turned to walk away. Seconds later, however, QC quickly turned around and ran back

---

[1] Video evidence shows at a minimum several dozen students in the cafeteria, with the majority acting unruly and in an excited manner.

toward the other student. To keep her from attacking the student, Lukes grabbed QC by the waist, and QC struggled to get out of his hold. Lukes then grabbed QC from behind, lifted her into the air, twisted and used his body to drop her (and himself) onto the ground. Lukes then guided QC through the crowd, with his arms still wrapped around her, as they both exited the cafeteria.

Several months later, QC's guardian, plaintiff, filed a complaint against Lukes, alleging that Lukes's conduct constituted "the torts of assault and battery" and gross negligence. Plaintiff later filed an amended complaint adding Kalamazoo Public School District (KPS) as a defendant, asserting that it was liable for Lukes's torts on a respondeat superior theory, and adding a new claim against Lukes alleging excessive force and unlawful search and seizure. After conducting discovery, defendants moved for summary disposition under MCR 2.116(C)(7) and (10). The trial court held a hearing, and then granted defendants' motion, essentially holding that Lukes acted reasonably under the chaotic circumstances by restraining QC and taking her to the ground to avoid further disruptive conduct in the school.

## I. STANDARD OF REVIEW

We review "de novo a trial court's decision on a motion for summary disposition, reviewing the record in the same manner as must the trial court to determine whether the movant was entitled to judgment as a matter of law." *Bronson Methodist Hosp v Auto-Owners Ins Co*, 295 Mich App 431, 440; 814 NW2d 670 (2012). "Our review is limited to the evidence that had been presented to the circuit court at the time the motion was decided." *Innovative Adult Foster Care, Inc v Ragin*, 285 Mich App 466, 475-476; 776 NW2d 398 (2009).

MCR 2.116(C)(7) provides that "[e]ntry of judgment, dismissal of the action, or other relief is appropriate because of . . . immunity granted by law" and "requires consideration of all documentary evidence filed or submitted by the parties," *Wade v Dep't of Corrections*, 439 Mich 158, 162; 483 NW2d 26 (1992). Whether an entity is entitled to governmental immunity is a question of law that we review de novo. *Mich Co Rd Ass'n v Governor*, 287 Mich App 95, 118; 782 NW2d 784 (2010). "In order to survive a motion for summary disposition, the plaintiff must . . . allege facts justifying application of an exception to governmental immunity." *Wade*, 439 Mich at 163.

MCR 2.116(C)(10) provides that the trial court may grant summary disposition in favor of the moving party when "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). The moving party must support its motion for summary disposition with either "affirmative evidence that negates an essential element of the nonmoving party's claim" or by demonstrating "to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim," *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks and citation omitted). "[T]he nonmovant's burden to avoid summary disposition after the movant has satisfied its burden through one of these two courses of action" is to "go beyond the pleadings to set forth specific facts showing that a genuine issue of material fact exists." *Id*. (quotation marks and citation omitted).

-2-

## II. GOVERNMENTAL IMMUNITY

Defendants moved for summary disposition of plaintiff's tort claims on the bases of immunity under both MCL 691.1407 (Lukes's conduct did not arise to statutory gross negligence, nor as to the intentional torts, was his conduct in bad faith) and MCL 380.1312(5) (providing immunity to school personnel who use reasonable force to maintain control in the school). As the trial court concluded, each of these provisions entitles defendants to immunity from plaintiff's tort claims.

## A. INDIVIDUAL IMMUNITY FROM INTENTIONAL TORTS

In *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567, 633-634; 363 NW2d 641 (1984), the Michigan Supreme Court held:

> Lower level officials, employees, and agents are immune from tort liability only when they are
>
> > 1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority;
> >
> > 2) acting in good faith; and
> >
> > 3) performing discretionary, as opposed to ministerial acts.

The governmental immunity act, MCL 691.1401 *et seq*., was subsequently amended to provide:

> (2) . . . [W]ithout regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency, each volunteer acting on behalf of a governmental agency, and each member of a board, council, commission, or statutorily created task force of a governmental agency is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service or caused by the volunteer while acting on behalf of a governmental agency if all of the following are met:
>
> > (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
> >
> > (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
> >
> > (c) The officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage. [MCL 691.1407(2).]

In *Odom v Wayne Co*, 482 Mich 459, 479; 760 NW2d 217 (2008), the Court provided "steps to follow when a defendant raises the affirmative defense of individual governmental

-3-

immunity." If the individual is "a lower-ranking governmental employee or official," then the trial court must first "determine whether the plaintiff pleaded an intentional or a negligent tort." *Id*.

"If the plaintiff pleaded a negligent tort, [the court must] proceed under MCL 691.1407(2) and determine if the individual caused an injury or damage while acting in the course of employment or service or on behalf of his governmental employer," and whether:

> (a) the individual was acting or reasonably believed that he was acting within the scope of his authority,

> (b) the governmental agency was engaged in the exercise or discharge of a governmental function, and

> (c) the individual's conduct amounted to gross negligence that was the proximate cause of the injury or damage. [*Id*. at 479-480.]

"If the plaintiff pleaded an intentional tort," then the trial court must determine "whether the defendant established that he is entitled to individual governmental immunity under the *Ross* test," by showing that:

> (a) The acts were undertaken during the course of employment and the employee was acting, or reasonably believed that he was acting, within the scope of his authority,

> (b) the acts were undertaken in good faith, or were not undertaken with malice, and

> (c) the acts were discretionary, as opposed to ministerial. [*Id*. at 480.]

## B. IMMUNITY WHEN USING REASONABLE FORCE ON STUDENTS

With regard to the use of corporal punishment, defined as "the deliberate infliction of physical pain by hitting, paddling, spanking, slapping, or any other physical force used as a means of discipline," MCL 380.1312(1), the statute provides:

> (3) A person employed by . . . a local or intermediate school board or public school academy shall not inflict or cause to be inflicted corporal punishment upon any pupil under any circumstances.

> (4) A person employed by . . . a local or intermediate school board or public school academy may use *reasonable physical force* upon a pupil as necessary to maintain order and control in a school or school-related setting for the purpose of providing an environment conducive to safety and learning. In maintaining that order and control, the person may use physical force upon a pupil as may be necessary for 1 or more of the following:

-4-

(a) To restrain or remove a pupil whose behavior is interfering with the orderly exercise and performance of school district or public school academy functions within a school or at a school-related activity, if that pupil has refused to comply with a request to refrain from further disruptive acts.

(b) For self-defense or the defense of another.

(c) To prevent a pupil from inflicting harm on himself or herself.

(d) To quell a disturbance that threatens physical injury to any person.

\* \* \*

(5) A person employed by . . . a local or intermediate school board or public school academy who exercises necessary reasonable physical force upon a pupil, or upon another person of school age in a school-related setting, as described in subsection (4) *is not liable in a civil action for damages* arising from the use of that physical force and *is presumed not to have violated subsection (3)* by the use of that physical force. . . .

(6) A person who *willfully or through gross negligence* violates subsection (3) or who *willfully or through gross negligence* violates subsection (4) may be appropriately disciplined by his or her school board or public school academy. This subsection does not limit a school board's or public school academy's authority to discipline an employee for a violation of its own policies.

(7) In determining whether an employee, volunteer, or contractor has acted in accordance with subsection (4), deference shall be given to reasonable *good-faith judgments* made by that person. [MCL 380.1312(3) to (7) (emphasis added).]

## C. REASONABLE FORCE-ANALYSIS

In *Widdoes v Detroit Pub Sch*, 242 Mich App 403, 405; 619 NW2d 12 (2000), a student was playing in the school gymnasium, although he knew he was not supposed to be there at that time, and a teacher, the petitioner, grabbed the student by the arm and pulled him to the door after the student refused his verbal commands to leave. The Detroit Board of Education subsequently terminated the teacher, finding "sufficient evidence to support the charge of excessive use of force." *Id*. at 406. The State Tenure Commission denied the teacher's appeal, holding that the teacher unlawfully inflicted corporal punishment on the student in violation of MCL 380.1312. *Id*. This Court reversed the Commission's ruling, holding that the teacher's use of force was reasonable and that "[n]umerous are the forces that intrude on the classroom to disturb the learning environment, and teachers must be able to deal with such problems promptly and decisively." *Id*. at 414.

In granting defendants' motion for summary disposition, and concluding that Lukes was entitled to governmental immunity under MCL 380.1312(5), in regard to the reasonableness of Lukes's use of force, the trial court stated:

-5-

The—the claim that there was a slipping is, I'm gonna use the term suspect, because that's really a question of—of fact, and ultimately I'm not gonna make that. That's not material to my inquiry but I will say I—I—just observing the—particularly last video, I cannot conclude that there was a slipping by [Lukes], resulting in them both falling. There was—there was certainly a degree of force associated with that. I, in viewing, the video, particularly the last one, cannot determine that that was someone who slipped and fell.

We disagree with plaintiff's argument that whether Lukes's use of force was reasonable is a question of fact for a jury. The testimony and video evidence do not contain any material factual disputes, even when accepting plaintiff's characterization of Lukes's "slamming" her to the floor. The evidence shows that Lukes was presented with a chaotic situation when arriving in the cafeteria. Security personnel could not alone handle the chaos, and when Lukes arrived, he prudently focused on where the main disruption was taking place. Once there, he saw that QC was engaged with at least one other student, and so he immediately instructed her to move away. She did so for a few seconds, but then turned and lunged toward the student again. To keep QC separated from that other student, Lukes grabbed QC, lifted her feet off the ground, and turned away from the student QC was attempting to get to, which also removed QC from that location. After a few steps, Lukes (while QC was struggling to get away from him) twisted and dropped to the ground, where he landed on top of QC.

In light of the circumstances facing Lukes, which required immediate action to quell a large, on-going and chaotic situation (of which QC was a significant player), his grabbing and "taking down" QC while she was struggling with him to get away (and to potentially get to her target, another student), was a reasonable, good faith judgment to use this physical force. No reasonable juror could conclude otherwise given these facts, particularly so because of the required deference that must be given to Lukes under MCL 380.1312(7) ("deference shall be given to reasonable good-faith judgments made by that person"). Certainly other actions could have been taken by Lukes, but given QC's repeated attempts to engage with the other student, her disregard of Lukes's instructions, her attempts to get out of his control, the seemingly similar size between QC and Lukes, and the chaotic and dangerous situation ongoing in front of him, Lukes's forceable action towards QC was reasonable, and entitles him to immunity on the negligence and assault and battery claims for his use of reasonable force.

## D. GROSS NEGLIGENCE-ANALYSIS

MCL 691.1407(2)(c) provides that governmental immunity is granted if "[t]he officer's, employee's, member's, or volunteer's conduct does not amount to gross negligence that is the proximate cause of the injury or damage." MCL 691.1407(8)(a) defines "gross negligence" for the purpose of governmental immunity as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." See also *Oliver v Smith*, 290 Mich App 678, 685; 810 NW2d 57 (2010) (stating that gross negligence "has been characterized as a willful disregard of safety measures and a singular disregard for substantial risks"). "Proximate cause in the context of MCL 691.1407(2) refers to the cause that is the one most immediate, efficient, and direct cause preceding an injury." *Id*. at 686 (quotation marks and citation omitted). "If reasonable jurors could honestly reach different conclusions regarding whether conduct constitutes gross negligence, the

issue is a factual question for the jury. However, if reasonable minds could not differ, the issue may be determined by a motion for summary disposition." *Id*. at 685.

In granting defendants' motion for summary disposition, and concluding that Lukes was entitled to governmental immunity under MCL 691.1407(8)(a), the trial court stated:

> In looking over the video and other evidence presented, this Court finds that the imminent danger posed by the minor, minor's violent and volatile behavior required the Defendant Lukes to exercise quick judgment in deciding how to physically intervene and prevent harm to other students. This Court does not believe that picking up a minor to try to remove her from a fight, and then when behavior continued to escalate . . . is in fact reckless. I think that the takedown was appropriate given all those circumstances and I determine that—that the behavior of the minor was in fact reckless in causing potential serious harm to others.

Plaintiff argues that whether Lukes was grossly negligent and whether his conduct was the proximate cause of QC's injury are questions of fact for a jury and that, therefore, the trial court erred by granting defendants' motion for summary disposition. Neither argument can succeed under these facts.

First, there is no material fact question as to whether Lukes's conduct amounted to "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(8)(a). In *Maiden v Rozwood*, 461 Mich 109, 113-114; 597 NW2d 817 (1999), a resident at a mental-health facility, the decedent, became physically and verbally abusive and caused a disturbance in the facility's dining room. The defendants, a resident care aide and a nurse, unsuccessfully attempted to calm the decedent, and then restrained him by holding his head, arms, and legs. *Id*. at 114. The decedent eventually stopped breathing and was later pronounced dead. *Id*. at 115. A wrongful death suit was subsequently filed, and the circuit court dismissed the complaint on the basis of government immunity, which the plaintiff appealed, arguing that "the individual defendants' conduct was grossly negligent within the meaning of [MCL 691.1407(2)(c)] and thus not immune from liability." *Id*. The trial court granted the defendants' motion for summary disposition, concluding that the defendants' actions did not amount to gross negligence, and this Court reversed the trial court's ruling. *Id*. at 115-116.

> The Supreme Court then reversed this Court and affirmed the trial court, holding that
>
> [t]he imminent danger posed by decedent's volatile behavior required that the staff exercise split-second judgment in deciding how and when to use physical intervention. While they might have used other means to restrain [the decedent], reasonable minds could not agree that the failure to employ those alternatives was so reckless as to demonstrate a substantial lack of concern for whether an injury results. [*Id*. at 126-127 (quotation marks omitted).]

The Court also noted that, to establish gross negligence pursuant to MCL 691.1407(2)(c), "the plaintiff must focus on the actions of the governmental employee, not on the result of those actions. That death resulted from the restraint does not support the conclusion that defendant's actions were

so reckless 'as to demonstrate a substantial lack of concern for whether an injury results.' " *Id*. at 127 n 10.

Similarly, and as just noted, the fight between QC and the other student took place in a crowded cafeteria under chaotic circumstances. When faced with this situation, Lukes was required to "exercise split-second judgment in deciding how and when to use physical intervention." *Id*. at 126-127. When Lukes picked up QC, she continued to struggle against him, and Lukes then fell with her onto the ground. Although it is true that Lukes could have used other means to restrain QC, "the failure to employ those alternatives" was not "so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Id*. at 127 (quotation marks omitted). A focus on Lukes's *actions*, rather than the *result* of those actions, leads to the conclusion that Lukes's conduct did not constitute gross negligence pursuant to MCL 691.1407(2)(c). See *id*. at 127 n 10.

Second, there is also no material fact question as to whether Lukes's conduct was the "most immediate, efficient, and direct cause" of QC's injury. *Oliver*, 290 Mich App at 686. In *Oliver*, 290 Mich App at 681, the defendant, a police officer, arrested the plaintiff after he was disruptive and uncooperative. The plaintiff filed a complaint, alleging that he was injured during the arrest because the officer used excessive force. *Id*. This Court reversed the trial court's ruling that denied the officer's motion for summary disposition, holding that the plaintiff's "wrist and hand injury is not clearly attributable to [the officer] alone and instead may just as fairly be attributed to plaintiff" because the "facts as developed clearly indicate that plaintiff was actively resisting arrest and the record indicates that plaintiff's injuries were just as likely caused by his own efforts to thwart the officers' attempts to restrain him." *Id*. at 687.

The same holds true here, where the surveillance footage demonstrates that QC struggled against Lukes's attempts to stop her from getting into a physical fight with the other student. Lukes and QC then both fell to the ground, as a result of both QC's resistance toward Lukes's hold, and Lukes's use of force. Therefore, QC's injury was not clearly attributable to Lukes *alone*, but may "just as fairly" be attributed to QC. See *id*. If QC had complied with Lukes's original verbal commands to leave the scene, or stopped resisting once Lukes grabbed her, her injury would not have occurred.

As a result, reasonable minds could not differ as to whether Lukes's conduct constituted gross negligence that was the proximate cause of QC's injury, see *id*. at 685; MCL 691.1407(2)(c), and there is no factual dispute on this question, see MCR 2.116(C)(7). Accordingly the trial court did not err by granting defendants' motion for summary disposition in this regard. See *Bronson Methodist Hosp*, 295 Mich App at 454.

## E. GOOD FAITH-ANALYSIS

MCL 691.1407(3) provides that Subsection (2), which lists the requirements for immunity from tort liability for government employees, "does not alter the law of intentional torts as it existed before July 7, 1986." In *Ross (On Rehearing)*, 420 Mich at 633-634, the Court held that lower level government employees are immune from tort liability only when they are "acting during the course of their employment," "acting in good faith," and "performing discretionary, as opposed to ministerial acts." See also *Odom*, 482 Mich at 480. The determination whether "the

defendant acted in the course of his employment and within the scope of his authority and acted in good faith, are questions of fact" that should be left to the jury if "reasonable minds could differ." *Gillam v Lloyd*, 172 Mich App 563, 577; 432 NW2d 356 (1988). Whether an employee was "acting in good faith" under *Ross* is a subjective test. *Oliver*, 290 Mich App at 688.

Plaintiff's amended complaint pleaded the intentional torts of assault and battery. In granting defendants' motion for summary disposition, and concluding that Lukes acted in good faith for purposes of governmental immunity under MCL 691.1407(3) and the *Ross* test, the trial court stated that "Lukes conducted his actions discretionary as he believed this was the right course of action for himself to take to de-escalate the situation" and that "no evidence was presented by anyone to determine whether or not [Lukes] was angry or did not act in good faith given the situation."

In challenging this decision, plaintiff argues that, because the trial court found that Lukes intentionally took QC to the ground, he could not have acted in good faith. However, whether Lukes was acting in good faith is a subjective test. See *Oliver*, 290 Mich App at 688; *Latits v Phillips*, 298 Mich App 109, 115; 826 NW2d 190 (2012) ("As long as defendant can show that he had a good-faith belief that he was acting properly in using deadly force, he is entitled to the protections of governmental immunity regardless of whether he was correct in that belief."). And here, Lukes testified that he picked up QC to "remove her from the situation," that he decided to physically intervene to restrain QC from "attacking other students," and that he was concerned for QC's safety and the safety of other students. Lukes was attempting to "deescalate the situation" and "remove [QC] from the situation," which was a chaotic cafeteria in which QC was attempting to fight another student in front of a large crowd of students.

The record demonstrates that Lukes held the belief that he was properly using physical intervention, see *Latits*, 298 Mich App at 115, and nothing in the record refutes his testimony. Therefore, reasonable minds could not differ as to whether Lukes was acting in good faith, see *Gillam*, 172 Mich App at 577, and the trial court did not err by concluding that Lukes was entitled to governmental immunity as to plaintiff's claims of assault and battery, see *Odom*, 482 Mich at 480.

III. VICARIOUS LIABILITY AS TO DEFENDANT KALAMAZOO PUBLIC SCHOOLS

MCL 691.1407(1) provides as follows:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed.

The operation of public schools is a "uniquely governmental function." *Deaner v Utica Community Sch Dist*, 99 Mich App 103, 108; 297 NW2d 625 (1980). Tort liability under MCL 691.1407(1) "means all legal responsibility arising from a noncontractual civil wrong for which a remedy may be obtained in the form of compensatory damages." *In re Bradley Estate*, 494 Mich 367, 385; 835 NW2d 545 (2013).

In *Ross (On Rehearing)*, 420 Mich at 623-624, the Court explained that "[a]llegations of vicarious tort liability generally arise where an employment relationship exists between the governmental agency and the individual tortfeasor." The Court held that "[e]ven when the tort is committed during the employee's course of employment and is within the scope of the employee's authority, the governmental agency is not automatically liable." *Id*. at 624-625. Rather, "the focus should be on the activity which the individual was engaged in at the time the tort was committed," and "if the activity in which the tortfeasor was engaged at the time the tort was committed constituted the exercise or discharge of a governmental function (*i.e.*, the activity was expressly or impliedly mandated or authorized by constitution, statute, or other law)," the agency is immune pursuant to the governmental immunity act. *Id*. at 625.

Article 1, § 11, of the Michigan Constitution provides:

> The person, houses, papers, possessions, electronic data, and electronic communications of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things or to access electronic data or electronic communications shall issue without describing them, nor without probable cause, supported by oath or affirmation. [Const 1963, art 1, § 11.]

In *Tennessee v Garner*, 471 US 1, 3; 105 S Ct 1694; 85 L Ed 2d 1 (1985), the United States Supreme Court determined "the constitutionality of the use of deadly force to prevent the escape of an apparently unarmed suspected felon." The Court held that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." *Id*. at 7. See US Const, Am IV. In *Bauserman v Unemployment Ins Agency*, 509 Mich 673, 708 n 13; 983 NW2d 855 (2022), the Court held that the state "is liable for harms it commits in violation of the Constitution," but it declined to address whether "other entities, such as municipal governments or individual government actors, can be liable for constitutional torts."

Plaintiff argues that KPS is vicariously liable for Lukes's conduct because Lukes's use of force violated Article 1, § 11 of the Michigan Constitution as an unreasonable seizure pursuant to *Tennessee*, 471 US at 3. Plaintiff further argues that, because *Bauserman*, 509 Mich at 707, held that the Court would not "limit the standard of liability in a constitutional-damages claim to a direct standard of liability," KPS can be held liable alongside Lukes. We disagree with plaintiff's arguments.

Plaintiff does not provide any persuasive support for her contention that Lukes's conduct constituted a seizure under the Michigan Constitution. Plaintiff's argument is essentially that, because the Court in *Tennessee*, 471 US at 7, held that "the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment," Lukes's conduct was equal to deadly force and, therefore, subject to the reasonableness requirement of Article 1, § 11. Plaintiff's reliance on *Tennessee* is misplaced because *Tennessee* concerned the use of deadly force by a police officer on an unarmed felon, an issue that is entirely distinct from the present case, in which Lukes either slammed or slipped and fell with QC, a minor, in order to prevent her from engaging in a fight with other students. Plaintiff has no viable seizure claim under the Michigan Constitution.

Although KPS could be vicariously liable if Lukes was likewise liable for QC's injuries, *Ross (On Rehearing)*, 420 Mich at 623-624, because the trial court did not err by granting summary disposition as to Lukes, it did not err in dismissing KPS.

Affirmed.

/s/ Mark T. Boonstra
/s/ Christopher M. Murray
/s/ Thomas C. Cameron